606 P.2d 196

**Gil CANDELARIA, Plaintiff-Appellant,**

**v.**

**Ira ROBINSON and Robert Singer, Defendants-Appellees.**

**No. 4017.**

Court of Appeals of New Mexico.

Jan. 3, 1980.

James L. Brandenburg, Albuquerque, for plaintiff-appellant.

Stephen M. Williams, Shaffer, Butt, Thornton & Baehr, Albuquerque, for Ira Robinson.

Robert M. Strumor, Santa Fe, Coors, Singer & Stratton, P. A., Albuquerque, for Robert N. Singer.

## OPINION

WOOD, Chief Judge.

Claiming defamation, three counts of the complaint sought damages from Singer and Robinson. These counts were dismissed on the basis that the alleged defamation was absolutely privileged. Plaintiff appeals. We (1) identify the immunity (privilege)

claims applicable to this case, (2) discuss the procedural posture of the appeal, and (3) discuss the duties of Singer and Robinson.

*Applicable Immunity Claims*

Velton (we use plaintiff's spelling) was murdered in February, 1974. The four defendants in *State v. Morrison*, Sup.Ct. No. 10084, were convicted of the murder. Subsequent proceedings resulted in the convictions being set aside and in the discharge of these four defendants. Lee was charged with the Velton murder in January, 1978. He was convicted of second degree murder with firearm enhancement. Sentence was imposed June 16, 1978. Lee's conviction was affirmed by memorandum opinion in *State v. Lee*, (Ct.App.) No. 3687 decided February 22, 1979.

The events referred to in plaintiff's complaint took place after the discharge of the four defendants in *State v. Morrison*, supra, and after the conviction of Lee.

The count against Singer alleged that in August and September, 1978, at the request of District Attorney Robinson, Singer prepared a report "regarding the investigation of the WILLIAM VELTON murder case in 1974"; that Singer submitted this report to Robinson; that statements by Singer in the report defamed plaintiff. One of the counts against Robinson alleged that Robinson wrote a letter to the sheriff on September 21, 1978. A copy of this letter was attached to the complaint. The letter quoted a portion of Singer's report, referred to plaintiff's investigation of the Velton case as "highly improper gestapo-type tactics," agreed with Singer that plaintiff "could not be prosecuted" due to the statute of limitations, and recommended that plaintiff's employment with the sheriff's department "be terminated immediately." This count alleged that Robinson's letter to the sheriff defamed plaintiff. The second count against Robinson alleged that comments made by Robinson at a "press conference" on September 14, 1978, defamed plaintiff.

There is no issue in this appeal concerning the sufficiency of pleading defamation; rather, the issues involve the immunity of Singer and Robinson. The trial court ruled that the alleged defamation was "absolutely privileged as a matter of law, and the New Mexico Tort Claims Act prohibits this suit . . . ." *Salazar v. Bjork*, 85 N.M. 94, 509 P.2d 569 (Ct.App.1973) stated that "immunity" is a more precise description than "privilege" in describing the protection afforded in this case. See *Franklin v. Blank*, 86 N.M. 585, 525 P.2d 945 (Ct.App.1974).

The trial court's ruling was in two parts: 1) an absolute immunity as a matter of law, and 2) immunity under the Tort Claims Act, §§ 41–4–1 through 41–4–25, N.M.S.A.1978 (Supp.1979).

The ruling of absolute immunity as a matter of law involves the concepts of judicial immunity and executive immunity. Judicial immunity is involved because the office of district attorney is a quasi-judicial office. *Ward v. Romero*, 17 N.M. 88, 125 P. 617 (1912). Executive immunity is involved because the office of district attorney has duties which cannot be properly classified as quasi-judicial. See § 36–1–18(B) and (C), N.M.S.A.1978.

The ruling of absolute immunity as a matter of law also involves the concepts of absolute immunity and qualified immunity. Robinson was the district attorney and Singer was his special assistant. On the basis of these positions, Robinson and Singer contend they have an absolute immunity; plaintiff contends their immunity is qualified. Involved in this aspect of the immunity argument is the fact that Robinson and Singer are attorneys; they claim an absolute privilege on that basis as well as on the basis of their official positions.

Attorney immunity is not involved. Absolute immunity is accorded to attorneys for defamation reasonably related to communication preliminary to, in the institution of, or during the course and as a part of judicial proceedings in which the attorney participates as counsel. *Romero v. Prince*, 85 N.M. 474, 513 P.2d 717 (Ct.App. 1973). This immunity does not apply to defamation on the attorney's part which occurs after final disposition of the judicial proceeding. Prosser, Law of Torts (4th ed.

1971) page 780. There is nothing indicating the alleged defamation involved judicial proceedings; the only showing is to the contrary. The alleged defamation occurred after the Lee conviction in 1978, involved the 1974 investigation of the Velton murder and, according to Robinson's letter, occurred after any criminal offense by plaintiff was barred by the statute of limitations.

It is unnecessary to determine whether the immunity involved in the first part of the trial court's ruling was judicial, executive, absolute or qualified. No immunity under these categories is involved unless the alleged defamation occurred during the performance of some duty by Robinson and by Singer. Restatement of The Law, Torts 2d (1977), §§ 585, 591, 593; see *Adams v. Tatsch*, 68 N.M. 446, 362 P.2d 984 (1961); *Mahona-Jojanto, Inc., N. S. L. v. Bank of New Mexico*, 79 N.M. 293, 442 P.2d 783 (1968); *Salazar v. Bjork*, supra; *Neece v. Kantu*, 84 N.M. 700, 507 P.2d 447, 60 A.L. R.3d 1030 (Ct.App.1973). Compare *Torres v. Glasgow*, 80 N.M. 412, 456 P.2d 886 (Ct. App.1969).

Section 41–4–4, supra, was amended in 1978 and this amendment was in effect at the time of the defamation alleged in the complaint. As amended, § 41–4–4(A) provided:

A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by Sections 41–4–5 through 41–4–12 NMSA 1978.

The only waiver section, remotely applicable, was § 41–4–12, supra, which pertains to law enforcement officers. Neither Robinson nor Singer was a "law enforcement officer" as that term is defined in § 41–4–3(D), supra. Robinson and Singer were public employees under § 41–4–3(E), N.M.S. A.1978.

"[I]mmunity from liability for any tort" § 41–4–4(A), supra, applies to Robinson and Singer if their alleged defamation occurred "while acting within the scope of duty . . . ." Section 41–4–3(F), supra, states:

"[S]cope of duties" means performing any duties which a public employee is requested, required or authorized to perform by the governmental entity regardless of the time and place of performance[.]

If either Robinson or Singer was acting within the scope of his duty as a public employee at the time of his alleged defamation, he is immune from liability under the Tort Claims Act regardless of any other immunity afforded to a district attorney or assistant district attorney. The question of judicial, executive, absolute or qualified immunity need not be decided because in this case, such immunity involves no duty different than the duty defined in the Tort Claims Act.

The applicable immunity claim, in this case, is the immunity provided by the Tort Claims Act. This holding is not to be taken as a suggestion that the converse is true. Section 41–4–2(A), supra, limits the liability of public employees; however, § 41–4–14, supra, preserves "any defense available . . . . . ."

*The Procedural Posture*

At oral argument, counsel agreed that depositions included in the record were not before the trial court, that the defamation counts were dismissed for failure to state a claim upon which relief can be granted. Rule of Civ.Proc. 12(b)(6). In considering such a motion, all facts well pleaded must be accepted as true; the motion may be granted only when the plaintiff cannot be entitled to relief under any state of facts provable under the claim. *Runyan v. Jaramillo*, 90 N.M. 629, 567 P.2d 478 (1977).

Robinson points out that the complaint "alleges no tort committed by Ira Robinson outside the scope of his duties." Robinson seems to assert that the absence of such an allegation brings the complaint within the immunity of the Tort Claims Act. We disagree. Immunity is a defense. *Prosser*, supra, page 776. Plaintiff was not required to anticipate this defense. *Jamison v. McMillen*, 26 N.M. 231, 190 P. 726 (1920); *Pople v. Orekar*, 22 N.M. 307, 161 P.

1110 (1916); see Rule of Civ.Proc. 8(a) and (c).

Plaintiff asserts the complaint contains no allegation that Robinson and Singer "were acting within the scope of their duties at the time the remarks and statements were made." On the basis of an absence of allegations concerning the duties of Robinson and Singer, plaintiff asserts that there was no basis for an immunity ruling and no basis for a ruling that the defamation allegations failed to state a claim upon which relief could be granted. We agree only in part with this contention. The specific allegations of the complaint are discussed in the next point.

*Duties of Singer and Robinson*

A. Singer

The complaint alleges that Robinson was the district attorney, that Singer "acting as a Special Assistant District Attorney . . . prepared a report at the request of . . . [Robinson] regarding the investigation of the . . . [Velton] murder case in 1974 and this report was submitted to . . . [Robinson]." Singer's alleged defamation was based on statements made by Singer in the report.

■ The district attorney may appoint assistant district attorneys and assign their duties. Section 36–1–5, N.M.S.A.1978. The allegation that Singer was a "special" assistant district attorney has no legal significance in this case. *Petition of Dusablon*, 126 Vt. 362, 230 A.2d 797 (1967).

■ Taking the allegations of the complaint as true, *Runyan v. Jaramillo*, supra, the complaint alleged that while acting as an assistant district attorney, Singer prepared his report at the request of Robinson and submitted the report to Robinson. This was an allegation that Singer's report was requested or authorized by the district attorney; this was an allegation that in preparing and submitting the report, Singer acted within the scope of his duty. See § 41–4–3(F), supra. Under the allegations of the complaint, Singer was immune from liability for his alleged defamation. Section 41–4–4(A), supra.

B. District Attorney Duties

The Constitution and statutes "prescribe and delimit" the authority of the district attorney. *State v. Reese*, 78 N.M. 241, 430 P.2d 399 (1967). Pertinent statutory duties of the district attorney, stated in § 36–1–18, N.M.S.A.1978 .are:

A. prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested;

\* \* \* \* \* \*

C. advise all county and state officers whenever requested[.]

N.M.Const., art. VI, § 24 states the district attorney "shall be the law officer of the state and of the counties within his district . . . ."

■ In connection with the powers of the state police board, *Winston v. New Mexico State Police Board*, 80 N.M. 310, 454 P.2d 967 (1969), it was held "that the authority of the agency is not limited to those powers expressly granted by statute, but includes, also, all powers that may fairly be implied therefrom." A similar rule of implied authority applies to district attorneys. New Mexico district attorneys' constitutional and statutory duties include duties incidental and necessary to the discharge of duties prescribed by the Constitution or statutes. *Withee v. Lane & Libby Fisheries Co.*, 120 Me. 121, 113 A. 22 (1921); *Adams v. State*, 202 Miss. 68, 30 So.2d 593 (1947).

■ The district attorneys' statutory duty to prosecute criminal cases includes the duty to investigate to determine whether a criminal charge should be filed; " 'it is his duty to inquire into the facts . . .' " *Adams v. State*, supra; *Hall v. State*, 136 Fla. 644, 187 So. 392 (1939).

■ The district attorney's request to Singer, acting as an assistant district attorney, to report on the investigation of the Velton murder was within the scope of the district attorney's duty stated in § 36–1–

18(A), supra. But no issue is made of this; the question of the scope of the district attorney's duty involves the district attorney's use of the report.

### C. Robinson's Letter to the Sheriff

 Robinson's letter to the sheriff quoted portions of Singer's report and referred to plaintiff's use of "highly improper gestapo-type tactics" in investigating the Velton murder. The letter agreed with Singer that plaintiff could not be prosecuted due to the statute of limitations. The letter recommended that plaintiff be terminated immediately. Was this letter in the scope of the district attorney's duty? Yes.

Section 36–1–18(C), supra, makes it the duty of the district attorney to advise the sheriff "whenever requested[.]" There being nothing indicating the sheriff requested the advice in Robinson's letter, we do not consider the statutory provision further.

 The Constitution designates the district attorney as the "law officer" of his district. What are the duties of a law officer? They are not defined in the New Mexico Constitution or statutes. Webster's Third New International Dictionary (1966) defines "law officer" as "a public official employed to administer or advise in legal matters[.]" *Withee v. Lane & Libby Fisheries Co.*, supra, indicated that the duties of an attorney general as chief law officer included the exercise of all power and authority as the public interest may require in the absence of express legislative restriction to the contrary. We do not suggest that a district attorney, as law officer, has the powers indicated for the attorney general in *Withee* because the statement in *Withee* is based on common law powers non-existent in New Mexico. *State v. Reese,* supra. *Withee* does, however, indicate that as law officer, the district attorney may take action in the public interest. *State ex rel. Jacobs v. Sherard,* 36 N.C.App. 60, 243 S.E.2d 184 (1978) suggests a district attorney has an implied duty to act as an "advocate of the State's interest in the protection of society."

The letter stating the investigation's conclusion as to plaintiff's conduct, stating the conclusion that the statute of limitations had run on any prosecution and recommending that plaintiff be terminated, was incidental to the district attorney's duty as law officer to advise on legal matters in the public interest and in the protection of society.

The recommendation for termination, stated in the letter, was made "as Chief Law Officer of Bernalillo County[.]" Plaintiff attached the letter to his complaint as an exhibit and thus made it a part of his pleading. The complaint showing that the letter was written as law officer and the letter being incidental to the duties of a law officer, the letter was authorized and within the "scope of duty" defined in § 41–4–3(F), supra. Robinson was immune from liability for the alleged defamation in the letter. Section 41–4–4(C), supra.

### D. Robinson's Press Conference

 *Adams v. Tatsch,* supra, quotes with approval from *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952). The quotation is to the effect that an attorney general is immune from liability for defamatory remarks made at a press conference because it was in the public interest to permit the attorney general " 'to keep the public advised of his official acts and conduct where such actions are . . . within the scope of his official duties or powers.' " Thus, if the defamatory remarks occurred at a press conference advising of action taken by the attorney general within the scope of his official duties, the remarks also occurred within the scope of the attorney general's duties. This approach, which involves informing the public of action taken within the scope of duty, is applicable to the district attorney's press conference. To the extent Robinson's press conference informed the public of action taken within the scope of the district attorney's duties, Robinson was immune from liability for alleged defamation at the press conference.

Plaintiff's complaint does not allege what Robinson stated at the press conference.

We do not know whether the press conference involved Singer's report, the letter to the sheriff, or other matters. Nor do we know in what context the alleged defamatory remarks were made. Inasmuch as the issue is the propriety of dismissing the complaint for failure to state a claim upon which relief can be granted, and inasmuch as immunity from liability for the press conference remarks cannot be determined from the complaint, dismissal of this claim was improper. There being nothing showing that Robinson's press conference remarks were immune, plaintiff could be entitled to relief under this claim.

The order dismissing the claim against Singer is affirmed. The order dismissing the defamation claim based on Robinson's letter to the sheriff is affirmed. The order dismissing the defamation claim based on Robinson's press conference remark is reversed. The cause is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

SUTIN, J., concurring in part and dissenting in part.

SUTIN, Judge (Concurring in Part and Dissenting in Part).

I concur and dissent.

Based solely on defendant's motion to dismiss for failing to state a claim, the trial court found:

> [T]hat the comments, remarks and statements of the defendants . . . are absolutely privileged as a matter of law, and the New Mexico Tort Claims Act prohibits this suit against defendants
> . . . . .

The trial court entered an Order:

> [T]hat the Second, Third and Fourth Causes of Action in plaintiff's Complaint are dismissed with prejudice and that defendants . . . are dismissed with prejudice.

Dismissed with prejudice means that plaintiff cannot state a claim for relief under any set of facts. I disagree.

Under the Tort Claims Act, immunity is granted defendants if their acts or conduct were done within the scope of their duties.

The second count alleged that Singer "prepared a report at the request of the Defendant, IRA ROBINSON, regarding the investigation." Under this allegation, Singer's report was prepared in the scope of his duties. After the Order was entered dismissing Count II, plaintiff learned by way of Singer's deposition that the final report was not mentioned in his contract or his appointment as an assistant to the district attorney or the attorney general. In other words, if plaintiff could amend his Count II and allege that the district attorney did not request the investigatory report, that it was prepared outside the scope of his duties, plaintiff would state a claim for relief under the Tort Claims Act, and the disclosed contents of the report would not grant Singer absolute immunity.

As to Singer, the Order of the District Court should be reversed.

I concur in the remainder of the majority opinion.