629 P.2d 350

Mary METHOLA, as guardian of the person and estate of Guadalupe Hernandez, an incompetent person, Plaintiff-Appellee,

v.

The COUNTY OF EDDY, New Mexico: Leroy Payne, Sheriff: Louie Granger, Simon Martinez, Jose Gutierrez, and Alonzo Onsurez, Defendants-Appellants.

Mary METHOLA, as guardian of the person and estate of Guadalupe Hernandez, an incompetent person, Plaintiff-Appellant,

v.

The COUNTY OF EDDY, New Mexico; Leroy Payne, Sheriff: Louie Granger, Simon Martinez, Jose Gutierrez, and Alonzo Onsurez Defendants-Appellees.

No. 4180, 4217.

Court of Appeals of New Mexico.

April 14, 1981.

Rehearing Denied May 4, 1981.

Glenn B. Neumeyer, Las Cruces, for Mary Methola.

Roger E. Yarbro, James W. Klipstine, Jr., McCormick & Forbes, Carlsbad, for County of Eddy et al.

## OPINION

WALTERS, Judge.

This case was the companion, on certiorari, of *Hooton-Doe v. City of Albuquerque*, Nos. 13,227 and 13,228, consolidated, also decided today. Earlier Court of Appeals decisions in all of these cases were reversed by the Supreme Court on the issue of liability of law enforcement officers under the Tort Claims Act for negligence in the performance of their duties. *See Methola v. County of Eddy*, consolidated, (St.Ct.1980), 95 N.M. 329, 622 P.2d 234. As with *Hooton* and *Doe*, this appeal is back in this Court on remand, for determination of other issues raised by the briefs of both plaintiff and defendants and not decided in the earlier disposition (Walters, J., not participating) of the Court of Appeals.

*Methola* was tried to the court without a jury, and a judgment totalling almost $218,000 was entered to cover plaintiff's incompetent's indebtedness to Methodist Hospital and Dr. Jack Dunn of Lubbock, Texas, and for his future custodial and medical care. Eddy County, Payne and Granger, in addition to the immunity argument settled by the Supreme Court, raise issues of indispensable parties, standard of duty of a custodian, and contributory negligence, in Cause No. 4180. Plaintiff, in a separate appeal, No. 4217, urges that because the trial court failed to award damages for loss of the incompetent's earning capacity and for pain and suffering, the judgment should be increased.

The salient facts of this case are recited in the Supreme Court decision; we will not encumber this opinion with a repetition.

The appealing defendants contend that the state and federal governments were indispensable parties in this lawsuit because, under §§ 27-2-23 and -24, N.M.S.A. 1978, they were subrogated to the right of any recipient of medical assistance against a third party for medical expenses recovered, to the extent such expenses were paid by either the state or federal government.

The argument is a tempest in a teapot, for no damages were awarded to plaintiff to cover any medical services rendered by any state agency of which a portion would be returnable to the federal government if those costs had been recovered.

The principal purposes of requiring "indispensable" parties to be joined are expediency and the protection of parties from the risk of double, multiple, or inconsistent liabilities. N.M.R.Civ.P. 19, N.M.S.A. 1978. In the instant case, only defendants could have been subjected to double liability had

plaintiff recovered from them the expenses borne on his behalf by the State. But plaintiff did not so recover; thus, the evil sought to be avoided by Rule 19 does not exist, and the reason for the rule also wanes into insignificance.

Defendants-Appellants advise us that in addition to services provided to plaintiff by the New Mexico Department of Vocational Rehabilitation, other medical benefits were rendered by the Health and Social Services Division. The Department of Vocational Rehabilitation filed a written waiver of any right, interest or cause of action it might have had against defendants for services extended to plaintiff's incompetent; the reference to this five-volume transcript provided us by defendants, regarding the claim of the State Health and Social Services Division, reflects only a stipulation that some "minimum figures" had been "paid by medicaid." Without independently reviewing this entire record, we are left completely in the dark on the amount to which that department might have had subrogation rights under the statute.

In *White v. Sutherland*, 92 N.M. 187, 585 P.2d 331 (Ct.App.1978), Chief Judge Wood pointed out that the provisions of § 27–2–23, *supra*, require the Health and Social Services Department to "make reasonable efforts to ascertain any legal liability of third parties," and to make its recovery, if any, against such third parties. "The statute does not pertain to the recovery of payments from the recipient or beneficiary of such payments . . . ." *Id.*, 92 N.M. at 189, 585 P.2d 331. The subrogation granted to the department by the statute was said, in *White, supra*, to be "the right to collect what it has paid from the party who caused the damage." *Id.*, at 190, 585 P.2d 331. The department could have intervened below. N.M.R.Civ.P. 24, N.M.S.A. 1978. Even so, having failed to intervene, it would appear that nothing has jeopardized the State's rights since damages for the department's expenditures were not entered against defendants; the department's subrogated rights were not disposed of. Presumably, the department's remedy still exists.

Whether or not a subrogation claim by the State would now be entertained, because of the State's inaction, we do not decide. There surely was some obligation on the part of the department to protect its rights if it intended to do so. The record indicates that the department and the Attorney General knew of plaintiff's suit soon after it was filed, but did nothing. The State apparently elected not to pursue the rights granted by the statute. The Plaintiff having recovered nothing under the trial court's judgment for the expenses to which the State was subrogated, we conclude that no harm whatever was caused to defendants by reason of the State's nonjoinder.

We do note that a motion for dismissal for failure to join an indispensable party, or a motion to join such a party, was never made before trial, even though the complaint alleged "care and treatment" provided by the State and that it "should be compensated for the reasonable value of their [sic] treatment and services." Defendants' request for dismissal came on the second day of trial and after eight of plaintiff's witnesses had testified. Under subsection (b) of Rule 19, we think the trial court acted with exemplary judicial wisdom in refusing to dismiss the case at that point, recognizing that any prejudice to the States' subrogation claim could be avoided by the manner in which relief was shaped.

We are further persuaded that this point of defendants' appeal is disingenuous because, if they were concerned that prejudice would truly attach, they made no effort to interplead the State by way of cross-claim or counterclaim at any time before or after the matter went to trial. *See* N.M.R.Civ.P. 22, N.M.S.A. 1978.

Beginning with *Sellman v. Haddock*, 62 N.M. 391, 310 P.2d 1045 (1957), and continuing at least through *Holguin v. Elephant Butte Irrigation Dist.*, 91 N.M. 398, 575 P.2d 88 (1977), it has been the rule in New Mexico that those whose interests will necessarily be affected by any judgment or order in a particular case, are necessary or

indispensable parties. But as Justice Easley noted in *Holguin, supra*, at 91 N.M. 401, 575 P.2d 88, the Supreme Court put Rule 19 in a proper perspective in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968), when it observed:

> To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him.

The trial court, in this case, correctly examined the necessity for joining the Department of Health and Social Services, and determined it could proceed without injury to the State. As a result of the trial court's assessment at the time joinder was raised, the defendants have sustained no "substantial risk" of double or multiple liability; the court was able to limit its decree in such a manner as not to affect the State's interest. *Provident, supra*, urges appellate courts to recognize the utility of a decree which protects absent parties' interests when indispensable party is urged; Professor Moore agrees. 3A Moore's Federal Practice, ¶¶ 19.07–2[1], 2[2].

There was no failure of complete relief between this plaintiff and these defendants; there was no harm done to the State or defendants by the State's absence as a party. Consequently, neither the State nor the federal government were necessary or indispensable parties in the adjudication of the rights and obligations between the parties to this suit.

■ Defendants next contend that the trial court articulated the proper duty of a jailer to reasonably exercise care for an inmate's protection, and then improperly applied it. The argument seems to be that there was a failure of evidence on the foreseeability of danger to plaintiff's incompetent and unless the danger was apparent or reasonably to be foreseen, there could be no breach of a duty to "exercise reasonable and ordinary care for the protection of the life and health of the person in custody," which is the standard announced in *City of Belen v. Harrell*, 93 N.M. 601, 603 P.2d 711 (1979). Defendants point to the fact that this was "the only serious injury" in the Eddy County jail in twelve years. They complain that the trial court decided, with hindsight, that the County should have maintained monitoring equipment and adequate supervisory quarters that would enable them to stay informed of inter-prisoner conduct on the jail's second floor.

This argument overlooks several of the trial court's crucial findings in its opinion and its formal findings and conclusions, to the effect that Guadalupe Hernandez was severely, cruelly, inhumanly, and brutally battered for three nights without intervention by any jail personnel. It found that testimony of prisoners which might otherwise be unworthy of belief was supported by unimpeachable medical testimony, and it therefore accepted the prisoners' evidence that the noise during the period of the beating was so loud that it was heard by inmates jailed on the first floor. There was "loud cursing and hollering," and such noise caused when "the incompetent was thrown against the table, floor, bars and walls," that the commotion "could be heard throughout the jail."

With this sort of evidence, it is not a question of what dangers the jailers knew or could anticipate at the time the incompetent was placed in the cell; it is the absolute failure of defendants to (1) provide for adequate monitoring of activity in the cells to prevent such conduct; (2) make adequate and periodic cell inspections to learn the condition of those in custody; (3) sufficiently supervise and account for the presence and safety of all prisoners in the custody of jail officials; and (4) adequately protect those who, in the exercise of the jailer's reasonable and ordinary care, the jailer would have learned were in need of protection. *See Blakeman v. Wichita*, 93 Kan. 444, 144 P. 816 (1914); Rest. Torts (Second) § 320.

Judge Neal specifically noted in his written memorandum opinion, made a part of

his findings and conclusions, that he relied on the Legislature's stated principle that the Tort Claims Act was based on "traditional tort concepts of duty and the reasonably prudent person's standard of care," § 41–4–2, N.M.S.A. 1978. That principle, coupled with that form of negligence recognized when one fails to do an act in the face of a duty to so act to prevent injury to another, U.J.I. (Civ.) 12.1, N.M.S.A. 1978 [now U.J.I.Civ. 16.1, 1980 Rev.], formed the basis of the trial court's judgment against defendants.

The trial judge's decision makes it clear that he was not primarily concerned with what the jailers knew about the prisoners in the cell where plaintiff's incompetent was placed; he was convinced that, in the exercise of due care, the jailers would and should have learned of the assault and protected the incompetent's safety. Instead, they "negligently failed . . . [in] their duty to come to the aid or to rescue him." (Judge Neal's opinion.) That view of the evidence is amply supported, and reflects the trial court's proper application of the standard of care owed by custodial officers to their prisoners.

Defendants' final point rests on the premise that Guadalupe Hernandez was on unfriendly terms with Simon Martinez, one of the cell occupants when Guadalupe was jailed, and that Guadalupe was therefore contributorily negligent (1) in failing to tell the jailer of the contentious relationship before entering the cell, as well as in failing to ask to be moved after he had been in the cell a few days; and (2) in failing to call for help or for removal to another cell after he had been attacked.

■ The issue of contributory negligence concerns whether Guadalupe exercised ordinary care for his own safety, and that question only becomes one of law requiring the fact-finder's resolution to be overturned when reasonable minds cannot differ and readily reach the conclusion that plaintiff's conduct falls below the standard to which he should have conformed for his own protection. *Stewart v. Barnes*, 80 N.M. 102, 451 P.2d 1006 (Ct.App.1969). Under the circumstances of this case, with evidence that Hernandez screamed for help loud enough for the entire jail to hear, and that no jailer came around while Hernandez was being beaten; and in view of the trial court's explicit findings not only that it was defendants' duty, not plaintiff's, to determine where prisoners would be confined, but that by reason of the severe beating Hernandez could not "intelligently be held accountable for his actions and conduct" in protection of himself, we adhere to the long-standing appellate rule of upholding the decision of the fact-finder if it is supported by findings which are sustained by the evidence. *Wendell v. Foley*, 92 N.M. 702, 594 P.2d 750 (Ct.App.1979). Simply because defendants believe the evidence could have supported different findings and conclusions, we are not free to substitute that judgment, or our own, for the judgment of the fact-finder. *Sternloff v. Hughes*, 91 N.M. 604, 577 P.2d 1250 (1978).

The trial court did not commit error in its findings against defendants regarding plaintiff's contributory negligence.

Turning now to plaintiff's appeal on the amount of damages awarded, the pertinent findings regarding the incompetent's losses are that he:

A. . . . is unable to engage in any business or trade.

B. . . . will require large sums of money for caretaking, custodial, and medical expense.

C. . . . has suffered great pain and mental anguish.

D. . . . will require future custodial care, medical care, and maintenance . . . in the sum of $189,800.00.

Three other findings related to the propriety of recovery for plaintiff's payments for Dr. Dunn's services, the hospital's entitlement to payment for medical services rendered, and plaintiff's rights to recover court costs. The court then concluded that plaintiff "has suffered damage in the amount of $189,800.00," plus the additional amounts due to the hospital and for the doctor's bill, and that "judgment should be entered accordingly."

In his memorandum opinion, the judge declared that "the Court will enter judgment in favor of the plaintiff, . . . [f]or pain and suffering, *future* custodial care, medical care and maintenance for the benefit of . . . plaintiff incompetent, [in] the sum of $189,800.00."

The judgment entered thereafter decreed that plaintiff recover:

A. The sum of $189,800 for the future custodial care, medical care, and maintenance of the Plaintiff's incompetent ward. . . .

None of the trial court's documents provided any monetary recovery for loss of the incompetent's ability to engage in business or trade, or for pain and mental anguish.

Finding D assigns the amount of $189,800 to costs of *future* care; the memorandum opinion, which became a part of the findings, conflicts with Finding D and the judgment to the extent that it promises a judgment of $189,800 to include pain and suffering with the future costs, whereas the other documents describe losses which would carry separate entitlements to damages in addition to the $189,800.

Although plaintiff did not refer us to a single transcript page relating to the incompetent's wage-earning capacity, or lack of it, defendants supplied some of the references in their answer brief which lead us to testimony on that issue. The expert economist's estimate of Guadalupe's probable work-lifetime gross earnings was based upon an assumption of future earnings at minimum wage and some period of unemployment during Guadalupe's remaining work life. He considered Guadalupe's past criminal incarcerations, and applied, as well, government statistics on the annual earnings of Spanish-origin males. He did not take into account other specifics of Guadalupe's past work history or what defendant's counsel described, on cross-examination, as Guadalupe's "sociopathic tendencies."

There was evidence that the incompetent had been employed by the Carlsbad Irrigation District; always worked a few days out of the week; was always looking for a job; and took whatever was available when he was out of work.

The trial court, on all of the evidence, found that

[A]s a result of . . . defendants' failure to properly care for and protect the incompetent, . . . [he] *has suffered loss* in the following particulars:

A. The incompetent, Guadalupe Hernandez, is unable to engage in any business or trade[,]

. . . .

but it awarded nothing in compensation for that loss.

■ Defendants justify the absence of an award for lost earning capacity on grounds that the expert did not consider the incompetent's "actual work history . . . past criminal record . . . likely . . . incarceration . . . [and] sociopathic tendencies" in evaluating that loss. We are referred to the pages of the expert's testimony where he agrees, on cross-examination, that some specific items were not included in his analysis. Where the evidence might appear in the 830 pages of testimony in this record, however, to show that those factors should have been included, is left to us to find. We decline to sift through the testimony of thirty-four witnesses. If additional information should have been incorporated into the expert's calculations, defendants have failed to point to a single transcript page establishing the alleged missing "facts." We will not search the record; that is the burden of defendants. *Louis Lyster, Gen. Contr., Inc. v. Town of Las Vegas,* 75 N.M. 427, 405 P.2d 665 (1965). The economic evidence, therefore, stands unimpeached. *See Tafoya v. Tafoya,* 84 N.M. 124, 500 P.2d 409 (1972). We would also emphasize that, whether there is any evidence of past earnings or of any decrease in plaintiff's earning capacity, proof of a continuing disability or an irreparable physical injury is all that is needed to permit the fact-finder to "award substantial damages" for loss of wage-earning ability. *Jackson v. Southwestern Publ. Serv. Co.,* 66 N.M. 458, 349 P.2d 1029 (1960). *See also Baros v. Kazmierczwk,* 68 N.M. 421, 362 P.2d 798 (1961).

·

Because the trial court explicitly found that plaintiff's incompetent has suffered, among other damages, the loss of wage-earning ability through the tortious conduct of defendants, we must conclude it was error to neglect awarding damages for that injury. Justice is not done if damages are not awarded for a loss found to have been inflicted through defendants' fault. *Jones v. Pollock*, 72 N.M. 315, 383 P.2d 271 (1963).

All that we have said above on the issue of damages applies equally to the trial court's failure to award an amount for Guadalupe's pain and suffering. The intention of the court to do so is clear from its findings. No doubt it was an oversight that lost earning capacity and pain and suffering were omitted from the judgment when damages were assessed. The $189,800 allowed by the judgment was specifically earmarked in the findings and the judgment to compensate for maintenance and custodial and medical care of plaintiff's incompetent in the future. The other elements of loss, i. e., pain and suffering and earning capacity, found by the court to have been suffered by Guadalupe as a result of this grisly incident, were compensable (*see* Chapter 14, N.M.U.J.I. (Civ.), N.M.S.A. 1978). Just as with lost earning capacity some compensation for pain and suffering should have been included in the award. The matter must be remanded for the trial court's determination of the additional amount that will "reasonably and fairly compensate" for those losses. N.M.U.J.I.(Civ.) 14.2; *Jones v. Pollock, supra.*

We affirm the trial court's decisions of liability. We remand for consideration of additional damages in accordance with this opinion.

HERNANDEZ, C.J., and ANDREWS, J., concur.