734 P.2d 794 (1987)
105 N.M. 556
Ernestine ABALOS, Plaintiff-Appellant,
v.
The BERNALILLO COUNTY DISTRICT ATTORNEY'S OFFICE, Steven Schiff, Louis Mande, John Does 4 and 5, Defendants-Appellees.
Ernestine ABALOS, Plaintiff-Appellee,
v.
BERNALILLO COUNTY DETENTION CENTER, Mike Hanrahan and the City of Albuquerque, Defendants-Appellants.
Ernestine ABALOS, Plaintiff-Appellant,
v.
E.L. HANSEN, the City of Albuquerque, and John Doe 6, Defendants-Appellees.
Nos. 9313, 9430 and 9513.
Court of Appeals of New Mexico.
February 17, 1987.
*795 Randi McGinn, Albuquerque, for plaintiff-appellant and plaintiff-appellee, Ernestine Abalos.
Rebecca A. Houston, Paula Z. Hanson, Keleher & McLeod, P.A., Albuquerque, for defendants-appellants Bernalillo County Detention Center, M. Hanrahan and The City of Albuquerque.
Karen C. Kennedy, Gretchen S. Kessinger, Butt, Thorton & Baehr, P.C., Albuquerque, for defendants-appellees Bernalillo County Dist. Atty.'s Office, S. Schiff, L. Mande and John Does 4 and 5.
John S. Thal, Timothy R. Van Valen, Modrall, Sperling, Roehl, Harris & Sisk, *796 P.A., Albuquerque, for defendants-appellees E.L. Hansen and the City of Albuquerque.

OPINION
BIVINS, Judge.
Plaintiff, Ernestine Abalos, brought this action under the New Mexico Tort Claims Act, NMSA 1978, Sections 41-4-1 to -29 (Repl. 1986), claiming personal injuries and damages resulting from her rape by John Moody following his allegedly negligent release from jail. Plaintiff sued three groups of defendants whom we label and identify as (1) the Detention Center defendants, including the Bernalillo County Detention Center (BCDC), the City of Albuquerque (the City), as operator of BCDC, Mike Hanrahan, its director, and John Does 1, 2 and 3, as employees of BCDC; (2) the District Attorney defendants, including the Bernalillo County District Attorney's Office, Steven Schiff, as District Attorney, Louis Mande, Assistant District Attorney, and John Does 4 and 5, as employees of the District Attorney's Office; and (3) the Albuquerque Police Department (APD) defendants, including the City of Albuquerque, E.L. Hansen, as Chief of Police for the APD, and John Doe 6, an employee of the APD.
A review of the record reveals that John Does 1, 2, 3 and 6 were not served with process and no appearance was made on their behalf. Moreover, neither did the motions to dismiss nor the respective orders thereon mention those defendants. Therefore, John Does 1, 2, 3 and 6 are not before this court on appeal. As to John Does 4 and 5, an entry of appearance was made on their behalf and they are included in the District Attorney defendants' answer and motion to dismiss. The order granting their motion to dismiss also includes John Does 4 and 5. Therefore, we include John Does 4 and 5 in this appeal.
The trial court denied the motion to dismiss filed by the Detention Center defendants, but granted those defendants the right to apply for an interlocutory appeal under NMSA 1978, Section 39-3-4. The trial court granted the respective motions to dismiss filed by the District Attorney defendants and the APD defendants. Plaintiff appeals directly from these orders dismissing her complaint. We granted the Detention Center defendants' interlocutory appeal and plaintiff's motion to consolidate the three appeals. During the pendency of this appeal, plaintiff and the APD defendants settled their differences, and an order was entered dismissing the appeal in Cause No. 9513. The issue in the remaining appeals involves the propriety of the trial court's ruling on the respective motions to dismiss plaintiff's complaint.
According to plaintiff's complaint, John Moody, who would later plead guilty to the crime of criminal sexual penetration of plaintiff, was arrested in Texas on December 27, 1983, on a warrant issued by the State of New Mexico for armed robbery and aggravated assault arising from an unrelated crime committed in Albuquerque in September 1983. Waiving extradition, Moody was returned to Albuquerque and booked into the Bernalillo County Detention Center on $25,000 bond. At the time of his arrest, Moody had a prior felony conviction for murder and theft, and a separate felony conviction for kidnapping.
Moody was arraigned in metropolitan court on January 2, 1984. Plaintiff alleges that under NMSA 1978, Metro. Rule 52(d) (Repl. 1985),[1] the district attorney had ten days within which to obtain an indictment on Moody "in order to keep him in custody." The grand jury returned an indictment against Moody on January 12, 1984, with a suggested bond of $25,000. The indictment was filed in district court and a bench warrant issued on January 13, 1984.
Whether the bench warrant was delivered before or after Moody was released *797 from custody is unclear. In any event, the pleadings recite, and none of the parties seem to question, that he was released on the afternoon of January 13, 1984, pursuant to a metropolitan court order, and that within six weeks after release he raped plaintiff.
Plaintiff generally claims breach of duty on the part of defendants in releasing Moody and in failing to warn the public, including plaintiff, of his release. These appeals require that we determine as to each defendant whether immunity was waived under the Tort Claims Act.
The Tort Claims Act shields both governmental entities and public employees from liability for torts except when immunity is specifically waived in the Act. If a public employee, while acting in the scope of duty, commits a tort falling within one of the waivers, the entity which employs him is liable. See § 41-4-4(A) (Repl.Pamp. 1982).
Wittkowski v. State, 103 N.M. 526, 529, 710 P.2d 93, 96 (Ct.App. 1985). As to all defendants, plaintiff relies on Section 41-4-12 as the basis for waiver of immunity. That section provides:
The immunity granted pursuant to Subsection A of Section 41-4-4 * * * does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.
A law enforcement officer is defined in Section 41-4-3(D) as
any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor[.]
We now examine each group of defendants, except for APD, to determine whether immunity from liability was waived.

I. THE DETENTION CENTER DEFENDANTS
These defendants filed their motion to dismiss under SCRA 1986, Rule 1-012(B)(6) based on a failure to state a claim. Although the deposition of Steven Schiff was before the court, and the parties refer to it in their briefs, the parties agree that the deposition has no bearing on the legal issue before this court and that the Rule 1-012(B)(6) standard of review should apply. Accordingly, we must accept all well pleaded facts as true, and resolve all doubts in favor of the sufficiency of the complaint. Wittkowski.
From the matters before us, including the parties' briefs and applicable statutes, it appears that BCDC is a joint county-municipal facility operated by the City of Albuquerque under NMSA 1978, Section 33-3-2 (Cum.Supp. 1986). Without conceding waiver of immunity for either, the Detention Center defendants urged, at oral argument, that BCDC is not a separate governmental entity and that the proper governmental entity, if any, is the City. They base this argument on the claim that BCDC is a building and that the City operates the detention center housed in that building as a department. Plaintiff does not disagree as long as one governmental entity, responsible for holding in custody persons charged with a criminal offense, remains a defendant in the lawsuit. Without deciding the correctness of defendants' position, we accept, for the purposes of the case, that the City is the proper governmental entity directly responsible for operating the detention center.
Defendants here concede, for the purposes of their motion, that the City is a governmental entity and that it employed Hanrahan and John Does 1, 2 and 3, identified as jailers. They argue, however, that the City, like the corrections department in *798 Wittkowski, does not fit within the definition of a law enforcement officer.
Whether the City should be named as a party defendant raises an issue that has caused confusion and inconsistency in this court. We must now clarify two points of law: (1) whether a governmental entity can be a named party defendant; and (2) if the entity can be sued, which entity should be named.

1. Governmental Entity as Named Defendant
In two recent cases, this court either held or implied that a governmental entity cannot be named as a defendant. Without expressly so holding, in Wittkowski, we stated:
The particular agency which was allegedly negligent is the corrections department. Plaintiffs allege that the law enforcement officer waiver applies to the corrections department. As quoted above, however, Section 41-4-3 defines law enforcement officers as "any full-time salaried public employee of a governmental entity." The corrections department is a governmental entity under the act. The statute is to be given effect as written. Methola [v. County of Eddy, 95 N.M. 329, 622 P.2d 234 (1980)]. The corrections department is not within the definition.
Id., 103 N.M. at 530, 710 P.2d at 97.
In Silva v. State, Ct.App.No. 9267 (Filed December 14, 1986), we followed Wittkowski and held:
Plaintiffs contend that CCRD [Corrections and Criminal Rehabilitation Department] is liable under Sections 41-4-6, -9, and -10. Each of these sections waives immunity for negligence of "public employees." A "public employee" is defined as an officer, employee, or servant of a governmental entity. § 41-4-3(E). The corrections department is a governmental entity under the Tort Claims Act, not an employee of a governmental entity. See Wittkowski. Therefore, CCRD does not fall within any of these sections, and the trial court properly dismissed the claims against CCRD.
Id., slip op. at 4.
We reasoned in each case that the Tort Claims Act provides waivers of immunity for certain activities. An examination of the Tort Claims Act, Sections 41-4-5 to -11, reveals that each of those waivers speaks in terms of "the negligence of public employees while acting within the scope of their duties." Section 41-4-12, which provides a waiver for law enforcement officers and the one with which we are concerned, refers to "law enforcement officers while acting within the scope of their duties." The definition of "public employee" includes law enforcement officers. § 41-4-3(E). Because a governmental entity is not by definition a public employee or law enforcement officer, we decided in those cases that an entity was immune from suit, despite the waivers.
This reasoning was incorrect and is contrary to other sections of the Tort Claims Act that contemplate clearly that a governmental entity can be a named defendant and can have judgment entered against it. See, e.g., §§ 41-4-14, -15(A), -17(A) and (B), -19(A) and (B) and -23(B)(5). Also, numerous New Mexico cases, although not addressing the question, have included an action under the Tort Claims Act naming various governmental entities. See, e.g., Wells v. County of Valencia, 98 N.M. 3, 644 P.2d 517 (1982); Tompkins v. Carlsbad Irrigation District, 96 N.M. 368, 630 P.2d 767 (Ct.App. 1981); Sugarman v. City of Las Cruces, 95 N.M. 706, 625 P.2d 1223 (Ct.App. 1980); Garcia v. Albuquerque Public Schools Board of Education, 95 N.M. 391, 622 P.2d 699 (Ct.App. 1980); O'Brien v. Middle Rio Grande Conservancy District, 94 N.M. 562, 613 P.2d 432 (Ct.App. 1980).
We erred in implying that a governmental entity cannot be a named defendant, and to the extent that Silva and Wittkowski state otherwise, they are hereby modified.
An entity or agency can only act through its employees. Without its employees, the entity is an empty shell. Each *799 of the eight waivers listed in Sections 41-4-5 to -12 identifies public employees; it follows that one can sue the public employee and the agency or entity for whom the public employee works. While the waivers all require negligence or conduct of public employees while acting within the scope of their duties, one need not expressly find liability in the Tort Claims Act against the governmental entity under the doctrine of respondeat superior as plaintiff contends, see Silva; rather, the statute itself makes the entity liable. § 41-4-4(B), (C) and (D). See Gonzales v. State, 29 Cal. App.3d 585, 105 Cal. Rptr. 804 (1972).
A governmental entity, however, cannot be sued randomly. Certain criteria must be met before an entity can be named as a party defendant.

2. When an Entity Can be Sued
Again, New Mexico's law is confusing and inconsistent regarding which entity can be sued and when. One line of cases suggests the city or county is a properly named defendant. See, e.g., Methola v. County of Eddy, 96 N.M. 274, 629 P.2d 350 (Ct.App. 1981); Doe v. City of Albuquerque, 96 N.M. 433, 631 P.2d 728 (Ct.App. 1981); Miera v. Waltemeyer, 95 N.M. 305, 621 P.2d 522 (Ct.App. 1980). In a second line of cases, the state is an improper party and only the particular agency that caused the alleged harm is the party that can be named. Silva; Wittkowski; Begay v. State, 104 N.M. 483, 723 P.2d 252 (Ct.App. 1985), rev'd on other grounds, Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986).
The reasoning behind naming the particular entity rather than the state is that only the party responsible for the alleged harm should be named. Silva. Where there is no indication that the state did anything wrong or had any responsibility for the alleged harm suffered by plaintiffs, the state is properly dismissed. Begay. We agree with this approach. While Silva, Wittkowski and Begay dismissed the state as being too remote an actor, we can logically extend the same analysis to the city. To force the city or state to defend an action in which it has little direct involvement would be unduly burdensome and unnecessary. Only the particular agency involved should be named. In so deciding, we do not intend to relieve any unnamed entity from liability imposed by Section 41-4-4.
Here, the City is not a remote actor; rather, according to its own admission, it is the particular entity that operates the detention center and it would be the governmental entity responsible for the alleged harm. Accordingly, BCDC, although perhaps not a separate agency, should be dismissed from the lawsuit. Whether the City can be sued as the particular entity responsible requires further analysis.
To name a particular entity in an action under the Tort Claims Act requires two things: (1) a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee. If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the Tort Claims Act. If the city or state directly supervises the employee, then the city or state can be named. We, therefore, hold today that the waivers in Sections 41-4-5 to -12 contemplate suing the immediate supervisory entity of the public employee involved.
We apply this analysis to the City. First, we must determine if John Does 1, 2 and 3 are public employees who fall within a waiver under Sections 41-4-5 to -12. Plaintiff includes within her pleading alleged violations while acting within the scope of their duties by John Does 1, 2 and 3, as jailers. Plaintiff argues that jailers have been held to be law enforcement officers, Methola, and are not immune from suit under Section 41-4-12. We agree.
Before a law enforcement officer (the jailers in this case) or the City can be found liable under the Tort Claims Act, we must find that the employees breached some duty required by law. Schear v. Board of County Commissioners, 101 N.M. 671, 687 P.2d 728 (1984). Section *800 41-4-3(D) requires law enforcement officers to hold people in custody. Plaintiff's complaint sets forth allegations of negligence which, if proved, are sufficient to establish breach of a duty under Section 41-4-3(D). Since John Does 1, 2 and 3 are employees of the City, the trial court was correct in denying its motion to dismiss.
Having held that plaintiff can sue the City, we must determine if Hanrahan, as Director of BCDC, can also be sued. The determining factor is whether Hanrahan falls within the definition of a law enforcement officer. The answer turns on that portion of the definition which includes "any full-time salaried public employee * * whose principal duties under law are to hold in custody any person accused of a criminal offense * * *." § 41-4-3(D).
Defendants rely on Anchondo v. Corrections Department, 100 N.M. 108, 666 P.2d 1255 (1983). They liken the director of the Detention Center to the warden of the state penitentiary who was held, in that case, not to be a law enforcement officer under Section 41-4-3(D). The supreme court looked to what the individual actually did, his duties and responsibilities. In Anchondo, the supreme court found, after reviewing the statutory duties of the secretary of corrections and the warden, that their principal duties were administrative in nature and that they did not deal directly with the daily custodial care of prison inmates.
Plaintiff claims that while the duties of the warden of the state penitentiary may not deal directly with the daily custodial care of prison inmates, such is not the case of the director of a county jail facility. She contends that the director of BCDC is no different than a county sheriff, who manages jails and who has been held as being a law enforcement officer while acting in that capacity. Methola.
While, from a strict analysis of statutory provisions, we can see a parallel between the director of the Detention Center and the warden of the state penitentiary, we can also see a parallel between the director of BCDC (jail administrator) and a sheriff. NMSA 1978, Sections 33-3-1 to -25 (Repl.Pamp. 1983 & Cum.Supp. 1986) outline the duties of both sheriffs and jail administrators. In light of Methola, we hold as a matter of law that the director's duties are principally to hold in custody persons accused of a criminal offense. Hanrahan, therefore, falls within the definition of law enforcement officer. Plaintiff's complaint sets forth allegations of negligence including, among other things, that Hanrahan had a duty to formulate and implement procedures to prevent the mistaken release of violent criminals. Such allegations, if proven, are sufficient to establish breach of a duty under Section 41-4-3(D), and Hanrahan is properly included as a defendant. We point out that no matter how many defendants plaintiff names, she is limited to a maximum amount whether she succeeds against one or all defendants on her claim. § 41-4-19(A).
We affirm the denial of summary judgment for Hanrahan and the City, but reverse as to BCDC.

II. THE DISTRICT ATTORNEY DEFENDANTS
While these defendants, as did the others, filed their motion to dismiss under Rule 1-012(B)(6), it appears the deposition of Mr. Schiff was before the trial court. Therefore, the standard of review under SCRA 1986, Rule 1-056 applies. Transamerica Insurance Co. v. Sydow, 97 N.M. 51, 636 P.2d 322 (Ct.App. 1981).
The question on appeal is whether a genuine issue of material fact exists that the district attorney, the assistant district attorney and John Does 4 and 5 acted as law enforcement officers. Unlike the Detention Center defendants and the APD defendants, an entry of appearance was made on behalf of John Does 4 and 5 and they were included in the order of dismissal. Plaintiff identified these John Does as employees of the district attorney. In this case, one of the employees was responsible for processing the paper work so that the Detention Center personnel would be notified of the indictment and warrant before *801 the expiration of the ten days and another employee may have delivered the warrant to BCDC.
Under the definition of law enforcement officer, Section 41-4-3(D), the only portion relied on relates to public employees whose principal duties under the law "are to hold in custody any person accused of a criminal offense." Following the directive of Anchondo, we must look to what the person actually does, his duties and responsibilities.
From a review of the material before us, including the deposition of Mr. Schiff, there is not the slightest indication that any of these defendants have, as their principal duty under the law, the responsibility to hold in custody any person accused of a criminal offense. See NMSA 1978, § 36-1-18 (Repl.Pamp. 1984). In applying the definition to these defendants, plaintiff seeks to make them law enforcement officers on the basis that their alleged failure to timely process the paperwork resulted in Moody's release from custody. An action or inaction indirectly affecting the release of a prisoner does not rise to a "principal dut[y] * * * to hold in custody" under law. Plaintiff has not directed our attention to any provision in the law that requires the district attorney, his assistants or personnel to hold prisoners in custody. That is the statutory function of jails and detention centers. By definition, then, these defendants are not law enforcement officers within the context of the facts of the present case.
Plaintiff argues that Candelaria v. Robinson, 93 N.M. 786, 606 P.2d 196 (Ct.App. 1980), is overly broad in holding that "[n]either Robinson [the district attorney] nor Singer [assistant district attorney] was a `law enforcement officer' as that term is defined in § 41-4-3(D), supra." Id. at 790, 606 P.2d at 200. We read this to mean neither was a law enforcement officer in the context of the claim made, a defamation suit. Whether a district attorney or any of his assistants could be law enforcement officers under other circumstances was not decided in Candelaria.
Nor do we need to decide that question here. Plaintiff refers us to federal cases decided under 42 U.S.C.A. Section 1983 (West 1981) where prosecutors may lose immunity while performing various functions. We are not concerned with Section 1983 actions or any function other than processing paperwork in the presentation of indictments returned by the grand jury. In that role, the District Attorney defendants did not act as law enforcement officers within the statutory definition.
Plaintiff raises an equal protection constitutional argument, contending that to allow immunity for the District Attorney defendants who were "performing the identical custodial task as BCDC and the APD liason [sic]" would create an arbitrary and unreasonable classification in violation of the United States and New Mexico Constitutions. Since we have held that the District Attorney defendants were not performing identical custodial tasks as BCDC, we need not answer plaintiff's equal protection argument. We have not held that the Tort Claims Act universally excludes all district attorneys; we have only held that the District Attorney defendants do not fall within the definition of law enforcement officers as applied to the allegations and facts of the instant case. We note, however, that a claim similar to plaintiff's claim has been addressed and rejected in Garcia v. Albuquerque Public Schools Board of Education.
We affirm the dismissal of the District Attorney defendants. We answer the Detention Center defendants' interlocutory appeal by holding that BCDC should be dismissed, but that the City and Hanrahan fall within the law enforcement waiver of immunity under Section 41-4-12.
IT IS SO ORDERED.
GARCIA and FRUMAN, JJ., concur.
NOTES
[1] Metro.R. 52(d) provides:

A preliminary examination shall be held within a reasonable time but in any event no later than ten days following the initial appearance if the defendant is in custody and no later than sixty days if he is not in custody. Failure to comply with the time limits shall not affect the validity of any indictment for the same criminal offense.