FILED
United States Court of Appeals
Tenth Circuit

March 17, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DAVID N. STANLEY,

     Plaintiff - Appellee,

v.

DONALD GALLEGOS, individually and
in his official capacity as District Attorney,
Eighth Judicial District, State of New
Mexico,

     Defendant - Appellant.

and

ED OLONA,

     Defendant.

No. 15-2156

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:11-CV-01108-GBW-WPL)**

_____

Scott P. Hatcher (Emma D. B. Weber, and Mark A. Cox, with him on the briefs), Hatcher
Law Group, P.A., Santa Fe, New Mexico, for Defendant-Appellant.

John P. Hays (Faith Kalman Reyes, The Simons Firm, LLP, Santa Fe, New Mexico, with
him on the brief), Cassutt, Hays & Friedman, P.A., Santa Fe, New Mexico, for Plaintiff-
Appellee.

_____

Before **HARTZ**, **HOLMES**, and **MATHESON**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

The federal civil-rights statute, 42 U.S.C. § 1983, authorizes suits against persons acting under color of state law for violations of rights granted by federal law. But under modern doctrine the defendant is not personally liable in damages for every violation of such rights. Wary of the damage to public welfare if government officers were deterred and distracted from vigorous performance of their duties by excessive exposure to litigation, the courts have provided them qualified immunity from suit despite their violations of federal law unless the unlawfulness of their actions has been clearly established by the time they act. This much is settled law.

The appeal before us raises a related issue that is not settled in this circuit. Say the violation of federal law was not clearly established, but under state law the action was unauthorized. Does a public officer lose the protection of qualified immunity when he acts outside the scope of his authority? Is there any justification for granting immunity in that context? The answer is not an easy one, as suggested by the division within this panel. Judge Holmes would not recognize a scope-of-authority exception to qualified immunity. Judge Matheson would not address whether the exception should be recognized or, if it were recognized, what the scope of the exception should be, because, in his view, the parties agree that the exception should apply and that the defendant's lack of authority must be clearly established. The author likewise would not decide whether to recognize or reject a scope-of-authority exception but would hold that were this court

2

to recognize a scope-of-authority exception to qualified immunity, the lack of authority under state law would have to be clearly established at the time of the challenged action.

In this case the district court endorsed the scope-of-authority exception to qualified immunity and ruled that Defendant Donald Gallegos, a district attorney, had clearly acted without state-law authority in forcibly removing a barrier that Plaintiff David Stanley had placed on a road to prevent traffic through his property. It therefore held that Defendant could not invoke the protection of qualified immunity. Exercising jurisdiction under 28 U.S.C. § 1291, the panel reverses and remands to the district court for further consideration of whether Defendant violated clearly established federal law or is instead entitled to qualified immunity.

## I.  BACKGROUND

Plaintiff owns property traversed by Red Hill Road, which has been used by the public to access White Peak, a popular hunting and wildlife area in northern New Mexico. Believing the road to be private, Plaintiff installed a cattle guard, locked gate, and barbed-wire fence to prevent access to his land. Believing the road to be a public right-of-way, Defendant wrote to Plaintiff on August 3, 2011, demanding that the gate be removed. The next week Plaintiff filed a still-pending quiet-title action in state court to determine whether the road is private or public. After three weeks with no response from Plaintiff, Defendant took matters into his own hands. Accompanied by a former president of the New Mexico Wildlife Federation, four deputy sheriffs, and 18 private persons, Defendant cut the lock on the gate and, with the help of others, removed the barbed wire and T-posts from the road. When Defendant learned a few weeks later that

3

Plaintiff had locked the gate a second time, Defendant directed the local sheriff to cut the lock and chain on the gate.

In December 2011, Plaintiff brought this suit under § 1983 in the United States District Court for the District of New Mexico. He claimed that Defendant violated his Fourth, Fifth, and Fourteenth Amendment rights by unlawfully seizing his personal property and creating a public right-of-way without due process of law. Defendant moved for summary judgment on the ground of qualified immunity. The district court, concluding that Defendant had clearly overstepped his state-law authority as a district attorney, denied the motion. Defendant appeals the denial.

## II. JURISDICTION AND STANDARD OF REVIEW

Under 28 U.S.C. § 1291, appellate jurisdiction is limited to the review of final decisions. *See Attocknie v. Smith*, 798 F.3d 1252, 1256 (10th Cir. 2015). Ordinarily, a decision is not final unless all issues are disposed of and the court is left with nothing to do but execute the judgment, *see id.*, so denials of summary judgment are not final. But, for reasons that need not be reviewed here, an order denying a summary-judgment motion asserting qualified immunity is considered a final, appealable decision so long as the appeal raises only abstract legal questions. *See id.* This court's review of the denial is de novo. *See Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

## III. QUALIFIED IMMUNITY/SCOPE-OF-AUTHORITY TEST

The federal civil-rights statute appears to be categorical in stating that "[e]very person who, under color of [law] subjects . . . any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws, *shall be liable to the party injured* in an

4

action at law . . . ." 42 U.S.C. § 1983 (emphasis added). But at the time of its enactment in 1871 the common law recognized certain protections from liability for government actors, and the Supreme Court has "recognized similar immunities under § 1983, reasoning that common law protections well grounded in history and reason had not been abrogated by covert inclusion in the general language of § 1983." *Filarsky v. Delia*, 132 S. Ct. 1657, 1662 (2012) (internal quotation marks omitted) (private attorney hired by city entitled to qualified immunity). In determining the applicability and scope of immunity, courts "look to the general principles of tort immunities and defenses applicable at common law, and the reasons [the Supreme Court has] afforded protection from suit under § 1983." *Id.* (internal quotation marks omitted).

The starting point for the analysis is ordinarily the common law of 1871. *See id.* An analysis of the law and practice at that time is sometimes nearly dispositive, as in *Filarsky*, which noted how common it was then for public officials to be only part-time. *See id.* at 1662–65. In this case, however, the principal guidance must come from more recent Supreme Court decisions addressing qualified immunity. This is for two reasons. First, in my view, Supreme Court opinions virtually compel the conclusion that a scope-of-authority exception to qualified immunity would, if adopted, need to be limited to actions that were clearly established by state law to be beyond the official's authority. This court would be remiss in its duty as a lower court if it rejected the reasoning of the Supreme Court based on a contrary understanding of history. Second, the early cases are not relevant to the peculiar issue before us. None that I have found presented the interplay between the laws of two sovereigns—the law of one sovereign governing the

5

elements of liability and the law of a different sovereign governing the scope of the defendant's official authority. When that interplay arose before the Supreme Court in *Davis v. Scherer*, 468 U.S. 183 (1984) (violation of state regulation did not deprive state official of protection of qualified immunity in action under § 1983), an opinion to be examined below, the Court looked to general principles of immunity law without citing common-law precedents on the subject.

I therefore turn to the policy reasons that support and limit the doctrine of qualified immunity. The foremost reason for the doctrine is the concern that fear of litigation would deter and distract public officials from "the unflinching discharge of their duties." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (internal quotation marks omitted); *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."); *Wyatt v. Cole*, 504 U.S. 158, 167 (1992) ("Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions."). As initially developed, immunity required satisfaction of both objective and subjective components—public officials were not entitled to qualified immunity unless they acted reasonably and in good faith. *See Wood v. Strickland*, 420 U.S. 308, 322 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 247–48 (1974). But the Supreme Court later abandoned the subjective prong, deciding that a fact-intensive inquiry into an official's state of mind was incompatible with the need to avoid excessively disruptive

6

discovery and litigation.  *See Harlow*, 457 U.S. at 815–18.  Instead the test became a

purely objective one, asking only whether a clearly established right had been violated.

*See id*. at 818.

One recurring issue has been how to apply this doctrine when a state employee

was apparently acting outside of his or her authority under state law.  When the employee

is so acting, the rationale for qualified immunity may not seem to apply.  Qualified

immunity shields officials from the distractions of frivolous litigation, allowing them to

effectively discharge their duties for the public good.  But why worry about causing the

employee to flinch when the employee's actions do not come within the job description?

One could conclude that when officials are no longer acting with official authority, they

are just like private citizens, so the doctrine of qualified immunity should not apply.  *See*

*Harbert Int'l., Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  After all, the

Supreme Court has declared that some private persons liable under § 1983 (because they

are acting under color of state law) are not protected by qualified immunity.  *See*

*Richardson v. McKnight*, 521 U.S. 399 (1997) (guards at private prison not entitled to

qualified immunity); *Wyatt*, 504 U.S. at 168 (qualified immunity not available to private

persons who invoked state replevin law later declared unconstitutional); *cf. Filarsky*, 132

S. Ct. 1657 (private attorney retained by city entitled to qualified immunity).  Why not

provide the same treatment to a government employee who has no official sanction to be

involved in the activity for which § 1983 liability is alleged?  Perhaps it is not surprising

that over half the circuit courts of appeal appear to have recognized a scope-of-authority

exception to the protection of qualified immunity.  *See, e.g., Shechter v. Comptroller of*

*City of New York*, 79 F.3d 265, 268–69 (2d Cir. 1996); *In re Allen (Allen I)*, 106 F.3d 582, 587 (4th Cir. 1997); *Rheaume v. Texas Dep't of Public Safety*, 666 F.2d 925, 930 (5th Cir. 1982); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992); *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987); *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995); *Gray v. Bell*, 712 F.2d 490, 502 n.36 (D.C. Cir. 1983); *see also Cox v. Cache Cty.*, No. 14-4123, 2016 WL 6471705, at *2 (10th Cir. Nov. 2, 2016) (unpublished); *Robbin v. City of Santa Fe*, 583 F. App'x. 858, 864–65 (10th Cir. 2014). None have explicitly rejected the exception. These decisions find support in the intuition that a public official still has a private persona and when acting in that capacity the official should not be protected by qualified immunity any more than a private person would be. The scope-of-authority exception provides a natural place to draw the line between an official's two personas.

On the other hand, the focus of § 1983 is federal law, not state law. Why should qualified immunity under that provision depend on whether the government employee complied with state law? That appears to be the lesson of *Davis*, in which the plaintiff sued state officials under § 1983 for unlawfully terminating his employment. *See* 468 U.S. at 186–87. The Supreme Court rejected the plaintiff's argument that the defendants were not entitled to qualified immunity because they failed to comply with a state regulation governing employee discharges. See *id*. at 193–96. It reasoned that under the plaintiff's approach, "officials would be liable in an indeterminate amount for violation of any constitutional right—one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation—merely because their official conduct

8

also violated some statute or regulation." *Id.* at 195. Further, "in § 1983 suits, the issue whether an official enjoyed qualified immunity then might depend upon the meaning or purpose of a state administrative regulation, questions that federal judges often may be unable to resolve on summary judgment." *Id*. The Court reiterated that qualified immunity may be overcome "only by showing that [the federal rights in question] were clearly established at the time of the conduct at issue." *Id*. at 197.

No binding precedent of this court has adopted the scope-of-authority exception to qualified immunity. Despite the apparent endorsement of the exception by most other circuits, I think we should be quite circumspect before embracing it. To begin with, it is unclear how to draw the line between conduct that *violates* state law (which *Davis* said is irrelevant to qualified immunity) and conduct that *is unauthorized by* state law (which is the purview of the scope-of-authority exception). The federal appellate cases invoking a "scope of authority" exception do not define the term. Nor does it appear to be a commonly used term of art in other contexts. As a matter of English usage, one might say that a state official acts beyond the scope of authority if he fires an employee without first giving him the opportunity to respond in writing, as required by state law. But *Davis* held that this misconduct was just a violation of state law that did not deprive the official of the protection of qualified immunity. *See id.* at 188. This suggests that an official's *scope of authority* should be interpreted broadly. For example, the Arizona Court of Appeals stated in a § 1983 case that a "prosecutor's 'scope of authority' includes those activities with some connection to the general matters committed to the prosecutor's control or supervision." *State v. Superior Court*, 921 P.2d 697, 700 (Ariz. App. 1996).

9

Perhaps *scope of authority* should be defined similarly to *scope of employment*, a term used in assessing whether a principal should be liable for the acts of an agent. In that context, "[C]onduct is not outside the scope of employment merely because an employee disregards the employer's instructions." Restatement (Third) Agency § 7.07 cmt. c. The analog to that proposition here would be that a public official could be acting within the scope of authority while violating state law (the official's instructions from the sovereign). But once it is accepted that an act prohibited by state law can be within the scope of the official's authority, how far should one go? Even under the well-developed common law construing *scope of employment*, questions about the boundaries of the term generate substantial litigation. The opportunity for (the risk of) litigation of the meaning of *scope of authority* is obvious. Difficult line-drawing questions are inevitable. Consider, for example, a suit against an animal-control officer under § 1983 for arresting the owner of an animal. If the arrest was for a misdemeanor and state law permits such an officer to arrest a person only for a felony, has the officer acted outside the scope of authority (so that the scope-of-authority exception applies), or has the officer merely violated state law (so that under *Davis* the officer is still entitled to qualified immunity)? What if state law gives animal-control officers no power of arrest whatsoever? One must pause before adopting a doctrine of such uncertain scope that is so in tension with controlling Supreme Court authority.

Further, when the Supreme Court rejected qualified immunity for certain private parties (acting under color of state law), it emphasized essential differences between private citizens and government officials that apply regardless of whether the official was

10

acting within the scope of authority. First, it said, "private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good. Accordingly, extending *Harlow* qualified immunity to private parties would have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service." *Wyatt*, 504 U.S. at 168. Second, "unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes." *Id.* Both differences suggest that the type of dispute before us be treated as one involving a government official. Even if Defendant was exceeding his authority, the action was on a matter of public interest, not a purely personal concern. And this litigation will distract Defendant from performing official duties regardless of the grounds for the claims and defenses.

An additional concern raised in *Davis* also has purchase here. One reason the Court rejected consideration of state-law violations in determining whether an official enjoyed qualified immunity was that the federal court might then need to determine "the meaning or purpose of [state law], questions that federal judges often may be unable to resolve on summary judgment." *Davis*, 468 U.S. at 195. As Judge Luttig wrote for half the active members of the Fourth Circuit in arguing against adoption of the scope-of-authority exception: "The federal courts . . . will now be obliged to conduct what will essentially be mini-trials on the question of whether the defendant was acting within the scope of his state law duties, a responsibility which will require these federal officers to

11

immerse themselves in the intricacies of state [law]." *In re Allen (Allen II)*, 119 F.3d 1129, 1137 (4th Cir. 1997) (Luttig, J., dissenting from denial of rehearing en banc).

Taking into account all these concerns about the scope-of-authority exception, I conclude that if the exception were to be adopted, it should be limited to cases in which there was clearly established state law that the government official's actions exceeded the scope of authority. Any less stringent standard would pose too great a risk of deterring public officials from vigorously performing their duties, embroil them in excessive litigation that would distract them from their duties, and overly complicate and delay litigation by requiring federal courts to become expert in state law. *See Allen I*, 106 F.3d at 592–93 (adopting clearly-established-law requirement for scope-of-authority exception). So limiting the possible scope-of-authority exception is as far as this court need go to resolve the appeal before us, because New Mexico law did not clearly establish that Defendant exceeded his authority as district attorney.

## IV. Authority of District Attorney

Plaintiff contends that the law was clearly established that Defendant's actions were beyond the scope of his authority. He concedes that preventing obstructions to roads is a legitimate function of a district attorney but argues that the means used by Defendant were inappropriate because a district attorney can properly act only through legal process, not by taking matters into his own hands. According to Plaintiff, the only means available to Defendant were filing criminal charges, participating in a quiet-title suit, or seeking a temporary restraining order in an emergency. I am not persuaded.

12

Under any reasonable construction of the term *scope of authority*, Defendant did not exceed its clearly established bounds.

Because there is little New Mexico law on point, I begin with legal background from other sources. In the federal courts it is widely accepted that prosecutors possess investigative and police-like power, even though this is not quasi-judicial power for which prosecutors have absolute immunity. When civil-rights claims are brought against prosecutors based on investigative or police-like actions, courts allow the prosecutors to invoke qualified immunity—without any suggestion that a prosecutor has no business engaging in police-like actions.

There are at least two such opinions from this circuit. In *Rex v. Teeples*, 753 F.2d 840 (10th Cir. 1985), a district attorney was sued for allegedly extracting an involuntary confession while the plaintiff was in a confused mental state. *See id*. at 841–42. The court rejected a claim of absolute prosecutorial immunity, which depends largely on whether the prosecutor is engaged in advocacy, *see id*. at 843, because "giving Miranda warnings to a general suspect and participating in his interrogation is 'police-related' work and does not fall within the category of a prosecutor's quasi-judicial functions," *id*. at 844. But it held that "a prosecutor acting as an investigator has . . . qualified immunity." *Id*. at 843. Similarly, in a case involving an alleged false arrest, this court acknowledged that a prosecutor has both a "quasi-judicial capacity" and an "investigative or police-related role." *Atkins v. Lanning*, 556 F.2d 485, 488 (10th Cir. 1977) (internal quotation marks omitted). Other circuits have expressed a similar view. *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1280 (11th Cir. 2002) ("When a prosecutor steps

out of the role of advocate and into the role of investigator, for example by participating in a search, he is performing a discretionary governmental function, and thus may be entitled to qualified immunity."); *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990) ("When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity, which requires a showing that his acts were objectively reasonable.").

Most notably, the Supreme Court, too, has recognized that prosecutors may have police-like functions. In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Court acknowledged that prosecutors may "perform[] the investigative functions normally performed by a detective or police officer," such as "plan[ning] and execut[ing] a raid on a suspected weapons cache," for which they are entitled only to qualified immunity. *Id*. at 273–74. Given these judicial statements, I cannot presume that the authority of district attorneys in New Mexico is as restricted as Plaintiff contends. He must point to clear support for his view if he is to prevail,[1] but he has failed to do so. If anything, the law in New Mexico suggests Plaintiff is wrong.

To be sure, Plaintiff is correct that New Mexico positive law does not explicitly convey the authority to do what Defendant did. The New Mexico Constitution says only that each district attorney is "the law officer of the state and of the counties within his district, . . . and shall perform such duties . . . as may be prescribed by law." N.M. Const.

---

[1] Of course, the legal issue is ultimately for this court to resolve. But the circuit has consistently held that once the defense of qualified immunity is raised, the plaintiff has the initial burden of directing the court to supporting authority. *See Gutierrez v. Cobos*, 841 F.3d 895, 901–02 (10th Cir. 2016).

14

art. VI, § 24. And the pertinent provision in the statute setting forth the duties of district attorneys says only that they shall "prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested." N.M. Stat. Ann. § 36-1-18(A)(1) (2016).[2] These provisions, however, have been construed broadly by the state judiciary. In *Candelaria v. Robinson*, 606 P.2d 196 (N.M. Ct. App. 1980), a district attorney wrote a letter to the sheriff's department recommending that the plaintiff be fired for his use of "highly improper gestapo-type tactics" that led to the prosecution and conviction of four innocent men for a capital crime. *Id*. at 199. (By the time of the letter the men had been exonerated and the real culprit had been convicted and sentenced. *See id*.) The plaintiff sued the district attorney for defamation. *See id*. The court acknowledged that absolute attorney immunity was not appropriate because the alleged defamation occurred after the conclusion of legal proceedings. *See id*. at 199–200. But it held that the district attorney was still entitled to immunity under the New Mexico Tort Claims Act because his actions fell within his "scope of duties." *Id*. at 200–202; *see also*

---

[2] § 36-1-18(A) states in full:

> Each district attorney shall:
> (1) prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested;
> (2) represent the county before the board of county commissioners of any county in his district in all matters before the board whenever requested to do so by the board, and he may appear before the board when sitting as a board of equalization without request;
> (3) advise all county and state officers whenever requested; and
> (4) represent any county in his district in all civil cases in which the county may be concerned in the supreme court or court of appeals, but not in suits brought in the name of the state.

15

*id.* at 200 ("'Scope of duties' means performing any duties which a public employee is requested, required or authorized to perform by the governmental entity regardless of the time and place of performance[.]" (quoting N.M. Stat. Ann. 1978, § 41-4-3(F)) (brackets omitted)). The court began with the proposition that "New Mexico district attorneys' constitutional and statutory duties include duties incidental and necessary to the discharge of duties prescribed by the Constitution or statutes." *Candelaria*, 606 P.2d at 201. It then gave an expansive interpretation to the term *law officer* as used in Art. VI, § 24 of the state constitution: "[A]s law officer, the district attorney may take action in the public interest" and "a district attorney has an implied duty to act as an advocate of the State's interest in the protection of society." *Id.* at 202 (internal quotation marks omitted). It concluded that the letter recommending the plaintiff's termination "was incidental to the district attorney's duty as law officer to advise on legal matters in the public interest and in the protection of society." *Id.*

In light of the above authority, I cannot say that Defendant's conduct was beyond the scope of his authority under clearly established New Mexico law. His actions must be considered in context. Plaintiff asserts that Defendant needed court authority to halt a blockade of a road. But if someone were intentionally blocking an interstate highway, surely the district attorney could instruct law-enforcement officers to remove the obstruction without first waiting for a court order. Although Plaintiff argues that there was no emergency here, this does not go to Defendant's scope of authority, but to whether the action was constitutional. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004) ("[I]n assessing whether a police officer may assert

16

qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities.").[3] Plaintiff therefore cannot escape qualified-immunity doctrine under the scope-of-authority exception.

Plaintiff argues in his appellate brief that even if his scope-of-authority argument fails, he has shown that Defendant is not entitled to qualified immunity because Defendant's acts violated clearly established constitutional law. But because the district court has not addressed the issue, this court should follow its general practice of having such matters first resolved by the district court. *See Trans-Western Petroleum, Inc., v. United States Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016) ("As a general rule, a federal appellate court does not consider an issue not passed upon below." (internal quotation marks omitted)).

## V. CONCLUSION

We **REVERSE** the district court's denial of summary judgment and **REMAND** for further proceedings to determine whether Defendant violated clearly established federal law.

---

[3] Plaintiff does not make an argument distinguishing between Defendant's acting personally by cutting the bolt and his directing others to perform the task. But in any event, he has not pointed to any authority supporting that distinction in this context—that is, authority allowing a district attorney to tell a law-enforcement officer to do something that he cannot participate in personally. It is noteworthy that in *Rex* the prosecutor asked questions during the interrogation. *See* 753 F.2d at 841–42. There is certainly no clearly established New Mexico law stating that a prosecutor could not lend a hand to law-enforcement officers performing a task at his direction, such as removing obstructions from a highway.

No. 15-2156, *Stanley v. Gallegos*
**HOLMES**, Circuit Judge, concurring in the judgment

I concur but only in the judgment. I respectfully disagree with the Lead Opinion's (i.e., the opinion of Judge Hartz) decision to apply a variant of the "scope-of-authority exception to qualified immunity," L. Op. at 2, in resolving this case.[1] The Supreme Court and our court have consistently engaged in a two-pronged inquiry centered on *federal* law when a defendant asserts a qualified-immunity defense: specifically, we ordinarily ask (in substance) whether the plaintiff can demonstrate (1) that the defendant violated his *federal* constitutional rights, and (2) that the rights in question were clearly established under *federal* law at the time of the defendant's conduct. This two-pronged inquiry constitutes settled law, and it does not contemplate—and, indeed, makes no room for—an antecedent, potentially dispositive examination of whether the defendant acted within the scope of his authority, as defined by *state* law; yet, the Lead Opinion's application of the scope-of-authority exception would require us to engage in precisely such an examination. As such, the Lead Opinion's application of this

---

[1]     Judge Matheson also concurs only in the judgment. Significantly, he "would defer deciding whether this court should adopt a scope-of-authority test for cases brought under 42 U.S.C. § 1983." Matheson Concurrence at 1. Judge Matheson does assume, without deciding, that the scope-of-authority test, which the parties employ, is applicable here, and, like the Lead Opinion, then concludes that the district court erred in its application of that test. But, in my view, considering the differing opinions of the panel judges, there is no majority rationale in this case; we all agree only as to the judgment. Accordingly, I refer to Judge Hartz's opinion only as the Lead Opinion, rather than as the majority opinion.

exception is legally erroneous; that is, the exception should be rejected and not applied at all to these facts. And, lest there be any confusion, the impropriety of the Lead Opinion's application of this exception is not diminished in any meaningful sense by the Lead Opinion's equivocation at the precipice about whether our court should formally endorse the exception. In this regard, the Lead Opinion states that "[t]he author . . . would not decide whether to recognize or reject a scope-of-authority exception but would hold that were this court to recognize a scope-of-authority exception to qualified immunity, the lack of authority under state law would have to be clearly established at the time of the challenged action." *Id.* at 2–3. However, this vacillation is cold comfort to those concerned about the improper erosion of the settled two-pronged inquiry for addressing the qualified-immunity defense.[2] Whether it formally adopts the exception or not, the Lead Opinion's application of it on these facts may cause such an erosion.

---

[2]    The Lead Opinion's vacillation is puzzling. It suggests a belief that we are painting on a blank canvas in defining the appropriate analytic rubric for deciding whether defendants are entitled to qualified immunity in lawsuits under 42 U.S.C. § 1983. But, as explicated *infra*, we are not. In this regard, the Lead Opinion ruminates over the following hypothetical—the answer to which is supposedly "not settled in this circuit": "Say the violation of federal law was not clearly established, but under state law the action was unauthorized. Does a police officer lose the protection of qualified immunity when he acts outside the scope of his authority?" L. Op. at 2. This question is clearly answered by our precedent, and the answer is "no," because a plaintiff must establish under our settled two-pronged inquiry that the federal law *was* clearly established, and, under the Lead Opinion's hypothetical, the plaintiff cannot do this. *See, e.g., Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015).

2

In sum, I respectfully disagree with the Lead Opinion's decision to apply a scope-of-authority exception here. For the reasons explicated below, however, I nevertheless concur in the judgment.

**I**

**A**

By way of overview, under the scope-of-authority exception applied by the Lead Opinion, we must first consider in qualified-immunity cases whether the government official exceeded the scope of his authority under clearly established *state* law. *See* L. Op. at 12 (noting "that if the exception were to be adopted, it should be limited to cases in which there was clearly established *state* law that the government official's actions exceeded the scope of authority" (emphasis added)). If the official did exceed it, he has effectively forfeited his right to be heard on the merits of his *federal* qualified-immunity defense. In other words, he has lost his right to have a federal court determine—under the settled two-pronged test that the Supreme Court has articulated and our precedent has faithfully applied—whether he violated clearly established *federal* law. If he has not exceeded the scope of his authority, the federal court ordinarily must proceed to resolve the merits of the official's qualified-immunity defense under the two-pronged test.

Applying this framework, the Lead Opinion determines that Defendant Donald Gallegos ("DA Gallegos") survives the antecedent (i.e., threshold) scope-

3

of-authority inquiry and that the district court should assay and resolve the merits of his qualified-immunity defense. More specifically, the Lead Opinion concludes that Plaintiff David N. Stanley ("Mr. Stanley") "cannot escape" the court's inquiry into the merits of DA Gallegos's qualified-immunity defense through the antecedent application of the scope-of-authority exception, L. Op. at 17, because DA Gallegos did not exceed "his authority under clearly established New Mexico law," *id.* at 16. Based on this conclusion, the Lead Opinion reverses the district court: although that court also applied the scope-of-authority exception, in the Lead Opinion's view (and that of Judge Matheson's separate concurrence), it erred in finding that DA Gallegos had acted clearly outside the scope of his authority and, therefore, forfeited an examination of the merits of his qualified-immunity defense. The Lead Opinion remands for the district court to assess, in the first instance, whether DA Gallegos is entitled to qualified immunity based on clearly established federal law.

I concur but only in the judgment. In my view, the scope-of-authority exception that the Lead Opinion applies upends our federally focused qualified-immunity standard, by erroneously grafting onto it an antecedent state-law inquiry that becomes "*always* relevant and often *dispositive* of a[n] [official's] *federal* right to qualified immunity." *In re Allen (Allen II)*, 119 F.3d 1129, 1135 (4th Cir. 1997) (third emphasis added) (Luttig, J., dissenting from the denial of rehearing

4

en banc).[3]  Like my colleagues, I would reverse the district court's summary-judgment order—hence, my concurrence in the result.  But my reason is more fundamental: the district court should never have applied a scope-of-authority exception in the first place.  I would remand for the district court to address DA Gallegos's entitlement to qualified immunity under the established two-pronged qualified-immunity decisional framework.

## B

### 1

42 U.S.C. § 1983, entitled "Civil action for deprivation of rights," provides that:

> [e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of *any rights, privileges, or immunities secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphases added).  In other words, § 1983 creates a cause of action against *state* officials (or, individuals acting under color of *state* law) for "violation[s] of *federal* rights."  *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998)

---

[3]  In discussing the scope-of-authority exception, the Lead Opinion borrows in part from the Fourth Circuit's analysis in *In re Allen (Allen I)*, 106 F.3d 582 (4th Cir. 1997)—a case declined for en banc review by an evenly divided en banc court.  In crafting my concurrence, I am guided and persuaded by Judge Luttig's well-reasoned dissent from the denial of en banc rehearing.  *See Allen II*, 119 F.3d at 1135–40.

5

(emphasis added); *accord Haywood v. Drown*, 556 U.S. 729, 731 (2009) (explaining that § 1983 creates an avenue for vindication of federal constitutional guarantees); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999) ("Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his *federal* rights." (emphasis added)); *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 358 (1990) (same); *Maine v. Thiboutot*, 448 U.S. 1, 4–11 (1980) (same).

Nevertheless, recognizing the "social costs" of litigation and that the "fear" of suit might "dampen" public officials' "unflinching discharge of their duties," the Supreme Court has long recognized that public officials enjoy qualified immunity from *certain* § 1983 liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)); *see id.* at 816 (explaining that the "values" that underpin the protections of qualified immunity include "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service"); *see also Elder v. Holloway*, 510 U.S. 510, 514 (1994) ("The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" (quoting *Harlow*, 457 U.S. at 806)); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (explaining that qualified immunity endeavors "to spare a defendant not only

6

unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit").

In *Harlow*, for example, the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. The Court underscored that the proper focus was on "the objective reasonableness of an official's conduct, as measured by reference to clearly established [federal] law." *Id.*; *see, e.g.*, *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987))). More recently, in *Mullenix v. Luna*, — U.S. —, 136 S. Ct. 305 (2015), the Supreme Court reaffirmed the same principle,[4] stating that "[t]he doctrine of qualified immunity shields officials from

---

[4]    Indeed, a long line of Supreme Court decisions have done so. *See, e.g.*, *Wood v. Moss*, — U.S. —, 134 S. Ct. 2056, 2061 (2014)*; Stanton v. Sims*, — U.S. —, 134 S. Ct. 3, 4 (2013); *Ortiz v. Jordan*, 562 U.S. 180, 183 (2011); *Morse v. Frederick*, 551 U.S. 393, 429 (2007); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Johnson v. Fankell*, 520 U.S. 911, 914–15 (1997); *Behrens v. Pelletier*, 516 U.S. 299, 305–06 (1996); *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 517 (1985).

7

civil liability so long as their conduct 'does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 308 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Notably, in the qualified-immunity context, the Court has made clear that *Harlow*'s objective-reasonableness inquiry is the *only* germane one: "No other 'circumstances' are relevant to the issue of qualified immunity." *Davis v. Scherer*, 468 U.S. 183, 191 (1984) (recognizing *Harlow*'s partial abrogation of the "totality of the circumstances" test of *Scheur v. Rhodes*, 416 U.S. 232 (1974)).

**2**

More specifically, following *Harlow*, the Court considered in *Davis* whether "a state official loses his qualified immunity from suit for deprivation of federal constitutional rights" if the official "violated the clear command of a state administrative regulation."  468 U.S. at 185.  Significantly, the party arguing for an affirmative answer to this inquiry—Plaintiff-Appellee—"ma[de] no claim that the appellants' violation of the state regulation either is itself actionable under § 1983 or bears upon the claim of constitutional right that appellee asserts under § 1983." *Id.* at 193.  Furthermore, Plaintiff-Appellee recognized that whether officials are entitled to qualified immunity under § 1983, in light of *Harlow*, turns on whether they have acted in an objectively reasonable manner under clearly established *federal* law.  *See id.* at 191, 193.

Nevertheless, Plaintiff-Appellee argued that an official's "fail[ure] to

8

comply with a clear *state* regulation," "although not itself the basis of suit, should *deprive the official of qualified immunity* from damages for violation of other statutory or constitutional provisions." *Id.* (emphases added). In effect, Plaintiff-Appellee contended that, "because officials fairly may be expected to conform their conduct to [the] legal norms," *id.*, found in state statutes and regulations, their violation of a clear state statute or regulation should be *dispositive* "in deciding claims of qualified immunity," *see id.* at 195. *See also id.* at 191 (noting that, *contrary to* the Court's "prior cases," the district court adopted the view that even "absent a violation of clearly established constitutional rights, appellants' violation of the state administrative regulation—although irrelevant to the merits of appellee's underlying constitutional claim—was *decisive* of the qualified immunity question" (emphasis added)).

Significantly for present purposes, the *Davis* Court rejected Plaintiff-Appellee's argument in full. It underscored that *Harlow*'s objective-reasonableness inquiry makes an official's liability under § 1983 depend on whether he violated clearly established *federal* law. *See id.* at 194. Thus, the Court flatly stated, "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision." *Id.* The Court reasoned that accepting Plaintiff-Appellee's approach, under which a violation of a clear state statute or regulation would amount to an additional "circumstance[]" in the qualified-immunity

9

analysis,

> would disrupt the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties. The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated. Yet, under appellee's submission, officials would be liable in an indeterminate amount for violation of any constitutional right—one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation—merely because their official conduct also violated some statute or regulation.

*Id.* at 195 (citations omitted). The Court unequivocally declined to go down this path with Plaintiff-Appellee: "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity *only* by showing that those rights were clearly established at the time of the conduct at issue." *Id.* at 197 (emphasis added).

In my view, *Davis* makes clear that the Lead Opinion's application of the scope-of-authority exception is wrong-headed. Akin to Plaintiff-Appellee in *Davis*, the Lead Opinion erroneously permits an additional "circumstance[]" to inform the qualified-immunity calculus—*viz.*, a threshold scope-of-authority exception—and makes it, in many instances, "*decisive* of the qualified immunity question." *Davis*, 468 U.S. at 191 (emphasis added). That is, if an official acts outside of his scope of authority, as defined by clearly established *state* law, he "forfeits" his right to have a federal court in a § 1983 action consider the merits

10

of his defense that his actions did not violate clearly established *federal* law.

However, *Davis* leaves no doubt that this approach is erroneous: aside from

*Harlow*'s objective-reasonableness inquiry, "[n]o other 'circumstances' are

relevant to the issue of qualified immunity." *Id.* at 191.[5] And officials do not

"forfeit their immunity" defense simply because they are shown to have acted

outside the scope of their authority under state law. *See id.* at 194 n.12.

Acknowledging *Davis*, the Lead Opinion ruminates regarding its impact on

a scope-of-authority exception (if adopted) and, in this regard, it asks some

interesting and thoughtful questions. *See* L. Op. at 8 ("Why should qualified

immunity under [§ 1983] depend on whether the government employee complied

with state law?"); *id.* at 9 (noting that "it is unclear how to draw the line between

conduct that *violates* state law (which *Davis* said is irrelevant to qualified

---

[5]     In *Elder*, the Court reinforced the point; specifically, it clarified that, under *Davis*'s holding, whether an official has satisfied duties or conditions that are defined by state law is not the focus of the qualified-immunity analysis:

> *Davis*, in short, concerned . . . this entirely discrete question: Is qualified immunity defeated where a defendant violates *any* clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based?  The Court held the *latter*.

510 U.S. at 515 (second emphasis added).  With that explanation of *Davis*'s holding, the *Elder* Court stressed that an official's entitlement to "qualified immunity from [a § 1983] suit" depends on whether the official violated a clearly established "*federal* right," not whether the official violated *some* clearly established duty under state law.  *Id.* at 516 (emphasis added).

11

immunity) and conduct that *is unauthorized by* state law (which is the purview of the scope-of-authority exception)").  But, tellingly, the Lead Opinion offers no answers that can reconcile in a principled and persuasive manner a threshold scope-of-authority rubric with the holding and reasoning of *Davis*, and I cannot conceive of any.  Rather than "pause before adopting a doctrine of such uncertain scope that is so in tension with controlling Supreme Court authority," L. Op. at 10, the Lead Opinion should reject the scope-of-authority exception outright and conclude not only that it is "in tension with" that authority, but also contrary to it.

In sum, under *Harlow* and *Davis*, an official should be granted qualified immunity *so long as* he "did not violate clearly established federal constitutional or statutory rights[;] [n]othing else is required for entitlement to the defense and nothing else need be shown." *Allen II*, 119 F.3d at 1135 (Luttig, J., dissenting from the denial of rehearing en banc).  Despite this established decisional framework, the Lead Opinion suggests, through its application of a scope-of-authority exception, that there is a threshold condition that an official must satisfy before a federal court can even consider whether he has violated clearly established federal law.  In my view, controlling Supreme Court precedent leaves no analytic space for such an antecedent condition.  Indeed, it is indistinguishable in material respects from the additional circumstance—i.e., a violation of a clear state statute or regulation—that Plaintiff-Appellee sought *unsuccessfully* in *Davis* to interject into the qualified-immunity analysis as a dispositive factor.

12

Accordingly, I could reject on this basis alone the Lead Opinion's approach.[6] But there is more.

## C

Guided by Supreme Court precedent, we have repeatedly and unfailingly reviewed qualified-immunity assertions under a two-part analysis, considering "(1) [whether] the official violated a [federal] statutory or constitutional right, *and* (2) [whether] the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *see e.g.*, *Cox*, 800 F.3d at 1245 ("[B]y asserting the qualified-immunity defense, Sheriff Glanz triggered a well-settled twofold burden that Ms. Cox was compelled to shoulder: not only did she need to rebut the Sheriff's no-constitutional-violation arguments, but she also had to demonstrate that any constitutional violation was grounded in then-extant clearly established law."). We have never even intimated that this inquiry into federal law should be preceded by a potentially dispositive examination of *state* law; yet,

---

[6] The Lead Opinion cites some Supreme Court cases where the Court rejected private individuals' assertions of the qualified-immunity defense. *See* L. Op. at 7 (citing *Filarsky v. Delia*, 566 U.S. 377 (2012); *Richardson v. McKnight*, 521 U.S. 399 (1997); and *Wyatt v. Cole*, 504 U.S. 158 (1992)). I do not find these cases remotely apposite to the present one. Indeed, the Lead Opinion itself acknowledges that, in such cases, the Court "emphasized essential differences between private citizens and government officials that apply *regardless of whether the official was acting within the scope of authority*." *Id.* at 10–11 (emphasis added). Notably, the cited cases do not even address the scope-of-authority exception that the Lead Opinion describes here. Consequently, in my view, these cases are inapposite to the question at hand.

13

that is precisely what the Lead Opinion's application of the scope-of-authority exception would require.

Indeed, the Lead Opinion candidly acknowledges that its proposed exception has no footing in our controlling caselaw. L. Op. at 9 ("No binding precedent of this court has adopted the scope-of-authority exception to qualified immunity."). And, in my view, we would be deviating without authority from our precedent—which endorses and applies the two-part qualified-immunity framework outlined *supra*—if we adopt this exception here. *See, e.g.*, *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); *see also United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000) ("Under the doctrine of *stare decisis*, this panel cannot overturn the decision of another panel of this court.").[7]

Indeed, across the wide landscape of our § 1983 qualified-immunity jurisprudence, I found only fleeting references to the scope of an official's

---

[7] Even accepting at face value the Lead Opinion's assertion that "over half the circuit courts of appeal appear to have recognized a scope-of-authority exception to the protection of qualified immunity," L. Op. at 7, at best, that only proves that the Tenth Circuit is on the *other* side of a circuit split. It does not provide a basis—absent an en banc proceeding or intervening Supreme Court precedent—for deviating from the clear thrust of our precedent: *viz.*, that a defendant's assertion of a qualified-immunity defense triggers *only* a two-part burden on the plaintiff to establish (1) that his constitutional rights were violated, and (2) that those rights were clearly established. And there are no antecedent or threshold conditions to the application of this qualified-immunity analysis. *See, e.g.*, *Cox*, 800 F.3d at 1245.

14

authority, and these references do not even begin to provide a foundation for the

scope-of-authority exception applied by the Lead Opinion.[8]  As to these

references, I highlight the two unpublished (i.e., nonprecedential) cases cited by

the Lead Opinion: *Robbin v. City of Santa Fe*, 583 F. App'x 858 (10th Cir. 2014)

(unpublished), and *Cox v. Cache County*, 664 F. App'x 703 (10th Cir. 2016)

(unpublished).  The Lead Opinion suggests that these two cases apply a scope-of-

authority exception.  L. Op. at 7–8.  I disagree.  These cases allude to an official's

scope of authority in their discussions of qualified immunity, but *only* under the

established two-part analysis; they do not endorse an additional, antecedent

---

[8]     The Supreme Court's "cases have recognized that the same qualified
immunity rules apply in suits against state officers under § 1983 and in suits
against federal officers," stemming from the Court's landmark holding in *Bivens
v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  *Davis*, 468 U.S.
at 194 n.12.  Therefore, I pause to acknowledge one Tenth Circuit case, involving
a *Bivens* action against federal officers, where fleeting references were made to
scope of authority, that is, *Pleasant v. Lovell*, 876 F.2d 787 (10th Cir. 1989).
*Pleasant* predates the Fourth Circuit's influential *Allen I* decision—upon which
the Lead Opinion relies in part—and neither the parties, the district court, nor the
Lead Opinion relies on its analysis.  I mention it for the sake of completeness, but
it does not advance the Lead Opinion's cause.  That is because, like the two
nonprecedential decisions of our court discussed *infra*, *Pleasant* refers to scope of
authority in connection to its undertaking of the established two-part qualified-
immunity analysis and, more specifically, its holding regarding the second prong
of that analysis which relates to the existence *vel non* of clearly established law.
*See Pleasant*, 876 F.2d at 803 ("[N]o clearly established law would preclude the
[federal officer] defendants from participating with or encouraging [a purported,
cooperating non-officer agent] to provide the government with her observations
and physical evidence, provided she stayed within the scope of her inherent
authority at [her employer].").  In other words, *Pleasant* does not even suggest
that scope of authority is the basis for an exception to the traditional two-part
qualified-immunity analysis or that it constitutes a threshold inquiry *before*
reaching (if at all) the merits of the qualified-immunity defense.

15

condition to the undertaking of this analysis. In other words, these cases do not even intimate that the merits consideration of an official's qualified-immunity defense under *federal* law is conditioned on an antecedent determination that he has not exceeded the scope of his authority under *state* law.

For example, in *Robbin*, a police officer brought a § 1983 action for "effective[]" termination without procedural due process, after his employer demoted him without following the "protections" afforded a non-exempt employee. 583 F. App'x at 859–60. The police chief employer, however, determined that the plaintiff constituted an exempt employee, subject to demotion without procedural protections. *See id.* at 860. Consequently, the parties' dispute centered on the scope of the police chief's authority to determine classifications for police officers. On that issue, the district court found that the police chief was entitled to qualified immunity, because "a reasonable officer in [his] position would not have known that his [classification] actions [extended] clearly beyond his established authority." *Id.* at 862.

On appeal, the *Robbin* panel articulated the following statement of the relevant law: "[U]nless the constitutional right at issue is clearly established, the defendant receives the protection of qualified immunity. When evaluating whether the constitutional right was clearly established, 'the touchstone of [the] inquiry is whether the officers were on notice that their conduct was unlawful.'" *Id.* at 864 (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th

16

Cir. 2003)). Applying this established qualified-immunity decisional framework, the panel affirmed, concluding "that [the police chief] did not act in such a way that a reasonable official in his position would have understood his actions treating [a] police captain as an exempt position to be outside of his authority." *Id.* at 865.

Notably, the panel referenced the police chief's authority in the context of discussing whether his conduct violated clearly established *federal* law, such that he would not be entitled to qualified immunity, *see id.* at 864–65—that is, in addressing the second prong of the established qualified-immunity standard. *Robbin* did *not*, as the Lead Opinion's approach would require, assay the scope of the police captain's authority as part of a threshold inquiry into whether he was even eligible to seek the protection of the qualified-immunity defense. To be sure, the *Robbin* court did refer to the scope-of-authority exception that some of "our sister circuits" have allegedly adopted under which "qualified immunity *also* may be inappropriate." *Id.* at 864 (emphasis added). However, this reference is patently dicta under the circumstances of *Robbin* since the court never purported to apply any such scope-of-authority exception. Therefore, this element of *Robbin*'s analysis gives me no pause. In short, any reliance that the Lead Opinion places on *Robbin* is misplaced.

Similarly, in *Cox*, a private Utah beekeeper brought a § 1983 action against a county bee inspector, alleging that the county official conducted a warrantless

17

inspection of his beehives. *See* 664 F. App'x at 704–05. The county official claimed qualified immunity, and the district court agreed. On appeal, the *Cox* panel recited the traditional *Harlow* standard, "Qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 705 (alteration in original) (quoting *Harlow*, 457 U.S. at 818). It then proceeded to conclude that the official's conduct fell within his discretionary authority and that, consequently, the private beekeeper failed to show that the official violated his clearly established Fourth Amendment rights. *Id.* Nothing in *Cox* aids the Lead Opinion. Like *Robbin*, the *Cox* panel considered the official's authority as a factor in the traditional qualified-immunity analysis to determine whether he violated clearly established law; it did not use this factor to decide at the threshold whether the officer was eligible to be heard on the merits of his qualified-immunity defense.

Accordingly, neither *Robbin* nor *Cox*—the two nonprecedential Tenth Circuit decisions that the Lead Opinion cites to bolster its cause—advance the Lead Opinion's analysis. And, by the Lead Opinion's own admission, there is nothing in our controlling precedent that supports this exception. Indeed, as with *Davis* and its Supreme Court progeny, I actually believe that our controlling Tenth Circuit precedent is to the contrary.

18

## III

For the foregoing reasons, I disagree with the Lead Opinion's analysis, in particular, its application of the scope-of-authority exception. I would explicitly reject this exception as contrary to Supreme Court and Tenth Circuit precedent. Like my colleagues, I would **reverse** the district court's judgment. However, I would do so, not because the court applied the scope-of-authority exception improperly, but instead because it applied the exception at all. I respectfully concur in the judgment only.

15-2156, *Stanley v. Gallegos*
**MATHESON**, Circuit Judge, concurring in the result.

I concur in the result. I commend my colleagues on their thoughtful opinions. I agree we must remand for the district court to consider Mr. Gallegos's qualified immunity defense. Like Judge Hartz, I would defer deciding whether this court should adopt a scope-of-authority test for cases brought under 42 U.S.C. § 1983. But I also would leave the question open and not constrain the eventual content of a test this court may adopt later when it has the benefit of more robust briefing on this significant issue.

Seven other circuits have adopted some version of the scope-of-authority test.[1] In this case, the district court applied the test from *In re Allen*, 106 F.3d 582 (4th Cir. 1997): "an official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority." *Id*. at 593. We have not adopted the *Allen* test as circuit precedent, but both parties use it to make their arguments on appeal.

Considering the parties' arguments based on the *Allen* test and without opining whether this court should adopt it, I think the district court erred.[2] As Judge Hartz shows,

---

[1] *See Shechter v. Comptroller of New York*, 79 F.3d 265, 268-69 (2d Cir. 1996); *In re Allen*, 106 F.3d 582, 587 (4th Cir. 1997); *Rheaume v. Texas Dep't of Public Safety*, 666 F.2d 925, 930 (5th Cir. 1982); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992); *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987); *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995); *Gray v. Bell*, 712 F.2d 490, 502 n.36 (D.C. Cir. 1983).

[2] In some instances, we have assumed a legal rule applies when resolution of a case does not require us to adopt or reject the rule. *See, e.g.*, *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1265 n.2 (10th Cir. 2004) ("[W]e assume, without deciding, that *Gonzaga* provides the correct test."); *Ctr. for Biological Diversity v. Norton*, 262 F.3d

New Mexico law did not clearly establish Mr. Gallegos's actions exceeded his authority

as district attorney.  We must therefore remand for the district court to consider the

qualified immunity issue.

1077, 1080 (10th Cir. 2001) ("[T]his court has never held that the catalyst test applies . . .
both parties advocate its application and we thus assume, without deciding, its
applicability."); *see also Prost v. Anderson*, 636 F.3d 578, 595 (10th Cir. 2011)
("[A]ssuming without deciding the validity of a particular test is often the narrower and
easier approach to resolving a case . . . .").